The CITY OF DENTON, Texas, et al., Petitioners,

v.

Michael VAN PAGE et ux., Respondents.

No. C-3972.

Supreme Court of Texas.

Jan. 8, 1986.

John B. Kyle, Sherman, for petitioners.

Phillips, White, Davidge, Griffin, Shelton, Eames, Wood & Duncan, William Wood, Denton, for respondents.

CAMPBELL, Justice.

This is a suit for damages under the Texas Tort Claims Act.[1] Tex.Rev.Civ.Stat. Ann. art. 6252–19 (Vernon 1970). Michael Van Page sued Frances Melton and the City of Denton for injuries received from a fire in a building owned by Melton. Page

---

1. The 69th Legislature adopted a nonsubstantive revision of the Tort Claims Act. See Civil Practice and Remedies Code, Title 5, Governmental Liability, ch. 959, §§ 101.001 et seq., 1985 Tex. Sess.Law Serv. 7173–7182 (Vernon).

alleged that the fire was caused by an unsafe or dangerous condition in the building. Page further alleged that the city was liable because its fire marshal was negligent in his investigation of previous arson attempts on the building thereby contributing to its dangerous condition. Page's wife joined in the suit and sought damages for mental anguish, loss of consortium and loss of household services.

■ Following a jury trial, the trial court rendered judgment for the Pages against Melton [2] and the City of Denton, jointly and severally. On appeal, the city contended that it was not liable for the dangerous condition of the building because it did not own, occupy, furnish or control the property in question. The court of appeals rejected this argument and, with minor reformation, affirmed the judgment of the trial court. 683 S.W.2d 180. We reverse the judgment of the court of appeals and render judgment that the Pages take nothing from the City of Denton.

Page rented a house from Melton. On a lot in back of the rental house was an old building used by Melton for storage. A short time after Page and his family moved into the rental house, the storage building was set on fire. On three separate occasions an arsonist attempted to burn the building and its contents. On each occasion the fire department for the City of Denton extinguished the fire. The fire marshal also investigated the scene and filed a report in which he concluded kerosene had been used to set the fires.

With this history in mind, Page was understandably suspicious when one evening he heard strange noises coming from the storage building. He went to investigate. As Page entered the building, he was met with an explosion and what he described as a "tornado of flames." He was severely burned, but able to crawl from the shed and run to his house for help.

The fire department responded again to extinguish the fire. The fire marshal also arrived to investigate. He discovered some empty five-gallon cans inside the storage building and several unopened cans of gasoline both inside and outside the building. A matchbook was found just inside the door of the building and the smell of gasoline was in the air.

Page sued Melton and the City of Denton alleging that his injuries were proximately caused by the dangerous condition of the storage building. Page's theory was that the city, through its fire marshal, was negligent in its investigation of the arson in failing to discover and remove the gasoline stored in the building or in failing to warn Page of the building's dangerous condition. Page alleged that the dangerous condition of the storage building was a "condition" of real property for which the city was liable under section 3 of the Tort Claims Act.

Page's theory was submitted to the jury which generally found in his favor. Material to Page's claim against the city were findings by the jury that Page was an invitee inside the storage building, that the gasoline was stored inside the building prior to and on the date of Page's injury and that the fire marshal knew, or should have known, that gasoline was stored in the building. The jury further found the fire marshal negligent in failing to inspect the building sufficiently to discover its dangerous condition and in failing to warn Page that gasoline was stored in the building.

2. Melton filed a motion for rehearing in the court of appeals, but it was not timely. She then filed a Rule 21c motion asking that the court rule on her late filed motion for rehearing. Tex.R.Civ.P. 21c. The court of appeals denied this motion. Melton has nevertheless filed a petition for writ of error with this court which addresses the merits of her case as well as the denial of her 21c motion. We have considered Melton's petition for writ of error as an interlocutory appeal under Rule 21c and hold that the court of appeals did not abuse its discretion in denying Melton's 21c motion. *See Banales v. Jackson,* 610 S.W.2d 732 (Tex.1980). Because a timely filed motion for rehearing in the court of appeals is a prerequisite to our jurisdiction over the application, we dismiss Melton's petition for writ of error for want of jurisdiction. *Oil Field Haulers Ass'n., Inc. v. Railroad Commission,* 381 S.W.2d 183, 187 (Tex. 1964).

On these and other findings by the jury, the trial court rendered judgment against the City of Denton.

The issue before us is whether the dangerous condition of the storage building is a condition of real property on which Page may base a waiver of the City of Denton's governmental immunity. Governmental immunity generally shields a municipality from liability in the performance of governmental functions such as fire protection. Section 3 of the Tort Claims Act, however, waives immunity in three general areas: (1) claims arising out of the use of motor driven vehicles and motor driven equipment, (2) claims arising from some condition or use of personal property, and (3) claims arising from some condition or use of real property. Tex.Rev.Civ.Stat.Ann. art. 6252–19 (Vernon 1970). That part of section 3 that applies to our question provides for liability for negligence

> caused from some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state....

*Id.*

■ Section 3 does not create new duties. It simply waives the common law doctrine of governmental immunity under circumstances where a private person similarly situated would be liable. As in any other tort case, a plaintiff relying on section 3 of the Act must prove the existence and violation of a legal duty owed him by the defendant. *Abalos v. Oil Development Company of Texas,* 544 S.W.2d 627, 631 (Tex.1976). The threshold issue is what duty did the City of Denton owe Page with respect to the dangerous condition of the storage building.

■ The court of appeals held that the city owed Page the same duty of care as Melton, the owner of the property, owed Page. Melton, as owner, was under a duty to keep her premises in a reasonably safe condition for her invitees, or to warn of any hazard. *J. Weingarten, Inc. v. Razey,* 426 S.W.2d 538, 539 (Tex.1968). The court of appeals recognized that the city did not own or occupy the storage building, but analogized the city's duty to that of an independent contractor hired to remedy a known defect on the premises.

To make this analogy the court of appeals relied on two independent contractor cases. *Strakos v. Gehring,* 484 S.W.2d 555 (Tex.1962); *Gundolf v. Massman-Johnson,* 473 S.W.2d 70 (Tex.Civ.App.—Beaumont), writ ref'd n.r.e. per curiam, 484 S.W.2d 555 (Tex.1972). In *Strakos,* two contractors hired to widen a road were held liable for plaintiff's injury on the premises—one because he created the dangerous condition; the other because he was in control of the area, permitted the condition to persist and failed to warn the public of the dangerous condition of the road. In *Gundolf,* the contractor in control of the premises was aware of the dangerous condition, agreed to make it safe and was held liable for plaintiff's injury when the contractor negligently failed to correct the known, dangerous condition.

The court of appeals saw no difference between an independent contractor hired to repair the premises and the fire marshal's investigation of the arson attempts on the premises. That court concluded that the city was under a duty to discover the dangerous condition of the storage building and either make it safe or warn invitees, such as Page, of the danger. We fail to see the analogy.

■ We agree that a person put in control of premises by the owner, such as an independent contractor, is under the same duty as the owner to keep the premises under his control in safe condition. *Smith v. Henger,* 148 Tex. 456, 226 S.W.2d 425, 431 (1950). It is the element of control, however, which distinguishes the independent contractor cases from this case. The City of Denton did not assume control over the storage building and did not assume a duty to discover any dangerous condition existing on the premises.

Apart from the independent contractor cases relied on by the court of appeals,

Page argues that the duty owed by the city is similar to that found in *Western Hills Bowling Center, Inc. v. Hartford Insurance Company*, 412 F.2d 563 (5th Cir. 1969). In *Western Hills*, plaintiff's bowling alley was partially destroyed by fire while the property was insured by defendant. Under the contract of insurance, the defendant insurance company undertook an investigation of the original fire. During the investigation, vandals entered the building, set a second fire and destroyed the bowling alley. The insurance company was held liable for the damage caused by the second fire because it took control of the bowling alley during its "extended" investigation and refused the owner permission "to alter the premises to guard against vandalism." 412 F.2d at 565.

*Western Hills* is also distinguishable from our case. The insurance company was liable because it took control of the premises and prevented the insured, the owner, from taking steps to protect his property. Control of the premises is again the distinguishing factor.

■ As previously observed, section 3 waives immunity under circumstances where a private person similarly situated would be liable. Ordinarily a person who does not own the real property must assume control over and responsibility for the premises before there will be liability for a dangerous condition existing on the real property. It is possession and control which generally must be shown as a prerequisite to liability. 62 Am.Jur.2d *Premises Liability* §§ 12 and 14 (1972). Additionally, a private person who has created the dangerous condition may be liable even though not in control of the premises at the time of injury. *Strakos v. Gehring, supra.* Also, a private person who agrees to make safe a known, dangerous condition of real property may be liable for the failure to remedy the condition. *Gundolf v. Massman-Johnson, supra.*

■ The conduct of the City of Denton does not satisfy any of these circumstances. The City of Denton did not exercise control over the storage building, nor did it

expressly or impliedly contract to remedy any dangerous condition on the property. The fire marshal did not create the dangerous condition, nor did he promise to find and remedy any unsafe condition in the building, nor did he promise to make the storage building safe from arson. We hold that the City of Denton is not liable for the dangerous condition of the storage building because it neither owned, occupied nor controlled the premises, nor did it create the dangerous condition.

These facts do not present a case of waiver of governmental immunity within the meaning of section 3 of the Tort Claims Act. Because the City of Denton is not liable for the dangerous condition of the storage building, it is unnecessary to discuss any of the other points attacking the judgment in favor of Michael Van Page or those points complaining of the judgment in favor of his wife. The judgment of the court of appeals as it pertains to the City of Denton is reversed and judgment is rendered that Michael Van Page and his wife, Ida Louise Page, take nothing from the City of Denton.

KILGARLIN, J., files a concurring opinion in which RAY, J., joins.

KILGARLIN, Justice, concurring.

I concur in the decision that the City of Denton is not liable for the dangerous condition of the storage building. I write only to clarify the court's interpretation of the Texas Tort Claims Act.

The majority is correct when it states that section 3 of the Tort Claims Act does not create new duties. "It simply waives the common law doctrine of governmental immunity under circumstances where a private person similarly situated would be liable." The Act's waiver of immunity is clear. A governmental unit is liable for its negligence "if a private person would be liable to the claimant in accordance with the law of this state." Tex.Rev.Civ.Stat. Ann. art. 6252–19, § 3 (Vernon 1970).

The majority opinion holds that "the City of Denton is not liable for the dangerous

condition of the storage building because it neither owned, occupied nor controlled the premises, nor did it create the dangerous condition." This is a correct statement, but it should not be read to suggest that a governmental unit will be liable *only* if it owns, occupies or controls the premises, or creates the dangerous condition. The duties of a private person are not so limited.

For example, the rule has long been recognized in Texas that "one who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby." *Colonial Savings Ass'n v. Taylor*, 544 S.W.2d 116, 119 (Tex.1976). The rule is stated in the *Restatement (Second) of Torts* § 324A (1965) as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

There is evidence in this case that the city fire marshal undertook to perform an inspection of the storage building. The jury found that the fire marshal did not exercise reasonable care in performing the inspection. The jury also found that the marshal's failure to properly inspect was a proximate cause of Page's injuries. However, in order to recover under section 324A, a plaintiff must prove that the defendant's failure to exercise reasonable care increased the risk of harm, or that the defendant undertook to perform a duty owed by another to the plaintiff, or that the plaintiff relied on the defendant's undertaking.

In this case, there is no evidence that the fire marshal's negligent inspection of the storage building increased the risk of harm. The city's negligence in failing to discover the stored gasoline left Page in no worse condition than if the city had never undertaken to inspect the building. Further, there is no evidence in the record to show that the city undertook with Frances Melton to perform a duty owed by Melton to Page. The city did not agree with Melton to inspect the storage shed or to keep the premises safe for her invitees.

Finally, there is no evidence that Page relied on the fire marshal's inspection to discover the dangerous condition of the storage building. On direct examination, Page testified as follows:

Q Did you see any of the firemen or Fire Marshal Hagemann making a search of the barn for flammable liquids?

A They went through the barn and walked all around the perimeter of it to see if they could find a discarded can or something of that nature.

Q Did anybody say anything to you about finding anything?

A No.

Q Did Fire Marshal Hagemann or any of the firemen say anything to you about making an inspection of the inside of the barn to find out if any of the flammable liquids were stored in there?

A No.

Q Do you know whether or not they did?

A They were going through the inside of the barn. Whether they were making an inspection to look for things, I can't say.

This testimony affirmatively shows that Page did not rely on the fire marshal's inspection. Without proof of any of the three elements, the city cannot be charged with a duty under section 324A of the *Restatement.*

There is no evidence the City of Denton owed any other duty to Page. Absent some showing of a duty, any duty, a private person is not liable for his negligence, and a city is not liable under section 3 of the Texas Tort Claims Act. Therefore, I concur in the decision announced by the court.

RAY, J., joins in this concurring opinion.