

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

December 29, 1989

Honorable Hector Uribe
Chairman
Subcommittee on Water
Texas State Senate
P. O. Box 12068
Austin, Texas    78711

Opinion No.    JM-1129

Re:   Whether an emergency ser-
vice district   is required  to
provide services to tax-exempt
entities in its district
(RQ-1769)

Dear Senator Uribe:

Article III, section  48-e, of  the Texas  Constitution
(adopted pursuant to S.J.R.  27,  § 1, Acts 1987, 70th  Leg.)
permits  the  creation  of  special  districts  to   provide
emergency services and authorizes a property tax to  support
them.[1]   Pursuant   to   this   constitutional   authority,   the
legislature adopted article 2351a-8, V.T.C.S., allowing  the
organization of emergency services districts with power  "to
carry out  the objects  of  their creation,  including  fire
prevention,  fire  fighting   services,  emergency   medical
services, and ambulance services."   V.T.C.S. art.  2351a-8,
§ 14.[2]  The district may "levy and enforce the collection of
taxes in the manner and subject to the limitations  provided
in this Act against the lands and other property within  the
district for the  district revenues."   Id. § 14(a)(5);  see
Attorney General Opinion JM-1010 (1989).

You point out  that tax-exempt property  is located  in
emergency service districts and ask the following question:

---

1.   Another constitutional provision also identified as
article III,   section 48-e   authorizes legislation   creating
jail districts.  H.J.R. 18, § 1, Acts 1987, 70th Leg.

2.   Article 2351a-9, V.T.C.S., authorizes the  creation
of emergency  fire services  districts  in counties  with  a
population of 125,000 or less.   Because you only ask  about
article 2351a-8, we do not address the provisions of article
2351a-9.

> Are these emergency service districts re-
> quired to provide emergency services to tax-
> exempt entities inside their district?

The specific tax-exempt entity that you are concerned about is the Port of Brownsville. We understand that the question arises in the context of evaluating the need for emergency services in the district in advance of providing them. You are not asking whether an emergency services district is liable for failing to provide emergency services in a specific instance. The latter question is principally a matter of the district's sovereign immunity. See V.T.C.S. art. 2351a-8, § 15; see also City of Denton v. Van Page, 701 S.W.2d 831 (Tex. 1986); Black v. Nueces County Rural Fire Prevention Dist. No. 2, 695 S.W.2d 562 (Tex. 1985); Civ. Prac. & Rem. Code § 101.055; Attorney General Opinion JM-748 (1987). Nor are we evaluating any policy decisions the district might make as to where fire stations or ambulance stations are to be located. State v. Terrell, 588 S.W.2d 784 (Tex. 1979). We will address your question from the perspective of the statutory purposes of emergency service districts, and will attempt to determine whether or not the denial of services to tax-exempt entities located in the district would be consistent with these purposes.

Various provisions of article 2351a-8, V.T.C.S., indicate the purposes of emergency services districts and the population they are to serve. Section 1 of article 2351a-8, V.T.C.S., provides as follows:

> Emergency services districts may be organized in this state under Article III, Section 48-e, of the Texas Constitution for the pro-
> tection of human life and health as provided by this Act. (Emphasis added.)

With respect to the hearing on a petition to establish a district, section 7, in part, provides as follows:

> If at the hearing it appears to the commis-
> sioners court that the organization of a district as petitioned for is feasible and practicable, and will be conducive to the public safety, welfare, health, and con-
> venience of persons residing in the district, the court shall make those findings and grant the petition and fix the boundaries of the district. (Emphasis added.)

The district's purpose is stated in terms of protecting the welfare of persons in the district. Persons residing in the district may work at a tax-exempt facility, such as

the Port of Brownsville. The public schools attended by children in the district and public hospitals and clinics at which residents of the district receive medical services are tax-exempt facilities. In many instances, providing emergency services to tax-exempt entities located in the district will be "conducive to the public safety, welfare, health, and convenience" of persons in the district. We do not believe that the legislature intended emergency services to be denied to persons in the district during the time that they are physically present on tax-exempt property.

Moreover, article 2351a-8, V.T.C.S., includes an express exemption for certain properties. Section 13(d) provides that a business entity located in an emergency services district is not subject to taxation by the district or to the other powers of the district if it provides its own fire prevention, fire control, ambulance, and other emergency services as specified in the statute. See Acts 1989, 71st Leg., ch. 606, § 1, at 1999 (amending V.T.C.S. article 2351a-8, section 13(d)).[3] In addition, there are special provisions relating to whether a proposed district should include an incorporated municipality, which might already provide its own emergency services. These express provisions for removing certain property from the district's authority indicate that the legislature gave this matter some thought, and suggest that it would have expressly removed tax-exempt entities from the district's powers and authority, if it had intended that result. The legislature, in our opinion, intended that an emergency services district provide services to tax-exempt entities located within it.

## S U M M A R Y

Emergency services districts established under article 2351a-8, V.T.C.S., may not deny services to tax-exempt entities within their boundaries.

Very truly yours,

JIM MATTOX
Attorney General of Texas

---

3. We do not address the constitutionality of this tax exemption.

p. 5943

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan Garrison
Assistant Attorney General