

# ATTORNEY GENERAL OF TEXAS
### GREG ABBOTT

December 12, 2003

The Honorable Kenneth Armbrister
Chair, Natural Resources Committee
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. GA-0128

Re: Responsibility and liability for maintenance of River Road in Refugio County, Texas (RQ-0068-GA)

Dear Senator Armbrister:

You ask who is responsible for maintenance of a public road, and who may be liable for any accident proximately caused by the road's condition. Your question was prompted by correspondence from a citizen concerned about the maintenance of River Road in Refugio County, Texas.

In 2000 this office, representing the Texas Department of Parks and Wildlife, which owns property on the road, sought a declaratory judgment that River Road was a public road. *See State v. Landgraf*, No. 2000-7-9044 (24th Dist. Ct., Refugio County, Tex. Apr. 2, 2001) (Final Judgment). According to the state's pleadings, River Road is a five-mile long gravel road that parallels the Guadalupe River and ultimately crosses into Calhoun County. The State of Texas, as plaintiff, asserted in its original petition that:

> River Road has been used openly and continuously by the public for at least seventy years and no permission has been sought or obtained. The State is unaware of any record of River Road having been formally dedicated to the public by a written instrument. However, Refugio County maintained River Road continuously for as long as local residents can remember until 1999, when Refugio County discontinued maintenance on River Road.

*Id.* (Plaintiff's Original Petition at 3). The court declared that River Road "is a public road, in which the public has obtained an easement by prescriptive use and by implied dedication," and enjoined the defendant from "interfering with the use of River Road as a public way." *Id.* (Final Judgment).

You first ask "who is responsible for maintenance . . . of the county road."[1]    The correspondence enclosed with your letter notes that "[s]ince January, 1999, the landowners [and] those of us who have property [and] cattle operations on this road have contributed to the maintenance. This includes adding road material, grading [and] cattle guard repair."[2]

We believe, based on the judgment in the *Landgraf* case and the unbroken history of county maintenance until 1999 reflected in the record, that a court would find that River Road is a county road. The judgment in the *Landgraf* case declares that River Road is public by virtue of implied dedication and prescriptive easement. Moreover, it appears that the county has impliedly accepted that dedication by maintaining the road since the 1920s. *Id.* (Plaintiff's Original Petition at 3). *See, e.g., Lindner v. Hill*, 691 S.W.2d 590, 592 (Tex. 1985) (fact that owner had allowed county to maintain road showed offer and acceptance of dedication); *City of Waco v. Fenter*, 132 S.W.2d 636, 637-38 (Tex. Civ. App.–Waco 1939, writ ref'd) (circumstances to be taken into consideration in question of acceptance of alley include "that it has been improved for use as a thoroughfare"); Tex. Att'y Gen. Op. No. JM-200 (1984) at 4 (acceptance may be implied from county maintenance).

A commissioners court "may not discontinue a public road until a new road designated by the court as a replacement is ready to replace it." TEX. TRANSP. CODE ANN. § 251.051(c) (Vernon 1999). "Discontinue," for the purposes of chapter 251, means "to discontinue the maintenance of the road." *Id.* § 251.001(2). Furthermore, a commissioners court must discontinue a road by order. *Id.* § 251.051(a).

The record suggests that the Refugio County Commissioners Court has taken no formal action of the sort mandated by section 251.051 to discontinue River Road's maintenance. Rather, on two separate dates, the county attorney issued letters indicating the county's intent to cease maintaining the road.[3]    Accordingly, the commissioners court may not permanently cease the maintenance without doing so formally by order and without designating a replacement.

However, as the Dallas Court of Civil Appeals wrote in 1952 in *Hill v. Sterrett*, 252 S.W.2d 766, 770 (Tex. Civ. App.–Dallas 1952, writ ref'd n.r.e.), "The Commissioners' Court possesses a broad discretion in the accomplishment of a constitutional objective; . . . for instance, maintenance of public roads." *Id.* (citations omitted). The decision as to how and where to expend limited public funds or to use limited resources is a classic case of governmental discretion. Absent a showing of abuse of that discretion, this decision is one for the commissioners court to make. "No principle of law is better settled than that acts of discretion and findings of fact on the part of public officers to

---

[1]Letter from Honorable Kenneth Armbrister, Chair, Senate Committee on Natural Resources, to Division Chief, Opinion Committee, Office of the Attorney General (June 17, 2003) (on file with Opinion Committee) [hereinafter Request Letter].

[2]Letter from Mr. Joe Custer, to Honorable Kenneth Armbrister, Texas State Senator (June 10, 2003) (on file with Opinion Committee) [hereinafter Custer Letter].

[3]Letters from Honorable Robert P. McGuill, Refugio County Attorney, to Whom It May Concern (June 15, 2000) (May 18, 1999) (on file with Opinion Committee).

which the requisite power is confided, including county commissioners, will ordinarily not be disturbed on appeal." *County of Hays v. Alexander*, 640 S.W.2d 73, 78 (Tex. App.–Austin 1982, no writ) (reviewing commissioners court order classifying county road); *see also Stovall v. Shivers*, 103 S.W.2d 363, 366 (Tex. 1937) (A commissioners court "shall regard the roads and highways of the county as a system, to be laid out, changed, repaired, improved, and maintained, as far as practical, as a whole to the best interests and welfare of all the people of the county. It is clearly contemplated that all roads and bridges of the county shall be maintained, repaired, and improved when necessary, as the conditions may require, regardless of the precinct in which same may be located, so far as the funds will equitably justify. . . . [A] commissioners court has the right to exercise its sound judgment in determining the necessity, but it cannot act arbitrarily in regard to such matter."). Failure to maintain a road adequately, of course, may have consequences in the event of accidents proximately caused thereby, the second area about which you inquire.

Beyond the question of responsibility for road maintenance, you ask about possible tort liability of the county or of private landowners "if citizens are maintaining the county road in lieu of the county." Request Letter, *supra* note 1. This question arises from your constituent's concern about "who is responsible for the safety of the driving public on this public road." Custer Letter, *supra* note 2. In the absence of any particular suit for damages, of course, the question is entirely speculative. Accordingly, we can only describe in the abstract the general principles of law that would apply in a particular instance.

The Texas Tort Claims Act, chapter 101 of the Civil Practice and Remedies Code, generally governs tort liability questions concerning a governmental unit, such as a county, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(2)(B) (Vernon Supp. 2004), for an accident resulting from the condition of a road. Section 101.021(2) of the Tort Claims Act provides that a governmental unit is liable for "personal injury and death [proximately] caused by a condition or use of tangible personal *or real property* if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Id.* § 101.021(2) (Vernon 1997) (emphasis added). Accordingly, the county may owe a duty of care equal to that of a private landowner.

The particular section of the Tort Claims Act at issue in cases regarding a road condition is usually section 101.022, which defines the governmental unit's duty according to the nature of the real property's defect. Section 101.022 reads:

> (a) If a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises.

> (b) The limitation of duty in this section does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets or to the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices as is required by Section 101.060.

*Id.* § 101.022.

As the Supreme Court of Texas explained the difference between the two subsections of section 101.022 in *State Department of Highways v. Payne*, 838 S.W.2d 235 (Tex. 1992):

> If [the supposed cause of the accident] was a premise defect, the State owed [the plaintiff] the same duty a private landowner owes a licensee. That duty requires that a landowner not injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not. If [the cause] was a special defect, the State owed [the plaintiff] the same duty to warn that a private landowner owes an invitee. That duty requires an owner to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which the owner is or reasonably should be aware.
>
> . . . .
>
> There are two differences between these theories. The first is that a licensee must prove that the premises owner actually knew of the dangerous condition, while an invitee need only prove that the owner knew or reasonably should have known. The second difference is that a licensee must prove that he did not know of the dangerous condition, while an invitee need not do so.

*Id.* at 237 (citations omitted).

Cases involving the conditions of public roads are generally, but not always, premise defect cases. Special defects "are excavations or obstructions, or other conditions which 'present an unexpected or unusual danger to ordinary users of roadways.'" *State Dep't of Highways & Pub. Transp. v. Kitchen*, 867 S.W.2d 784, 786 (Tex. 1993) (citations omitted). For example, a "chughole" causing an accident has been held to be of such a size as to constitute a special defect, and therefore to trigger a higher duty of care. *County of Harris v. Eaton*, 573 S.W.2d 177, 178-80 (Tex. 1978).

Antecedent, however, to the question of the nature of the duty a county might owe the driving public is the issue of whether in a particular instance it exercises sufficient ownership or control of the road to owe any duty at all. In *IDC, Inc. v. County of Nueces*, 814 S.W.2d 91 (Tex. App.–Corpus Christi 1991, writ denied), the question was whether Nueces County was liable for an accident caused by a hole in the surface of a public road called Chapman Ranch Road. The county argued that it owed no duty to the public for the condition of the road, a state highway, because it did not own, occupy, or control the premises involved. The county's evidence was that it did not own, maintain, or control the road, but rather that the road was solely the state's property. The appellate court affirmed the trial judge's entry of summary judgment for the county, writing, "It is fundamental that the right of recovery for an injury sustained by the plaintiff as a result of the defendant's conduct must be founded upon a legal duty of some character owed to the plaintiff with respect to the injury and a violation of that duty by the defendant." *Id.* at 93.

The question of ownership and control will frequently require the resolution of particular facts, and is therefore not one in which this office ordinarily engages in the opinion process.[4] However, in this instance, because the county has for a substantial number of years exercised control over River Road and its condition, but has not taken the necessary formal action to discontinue maintenance of the road, it might well be subject to the imposition of civil liability for an accident proximately caused by the condition of the road.

In addition, those who own or control real property may be under a duty to the public to keep that property in a reasonably safe condition, if the public has a right of access to that property. Moreover, one who neither owns nor controls real property may also be held liable for a dangerous condition on that property if he creates the condition. *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 54 (Tex. 1997); *City of Denton v. Page*, 701 S.W.2d 831,835 (Tex. 1986); *Strakos v. Gehring*, 360 S.W.2d 787, 795 (Tex. 1962). Accordingly, if in their maintenance of River Road the private landowners created a hazardous condition, they could be liable for accidents proximately caused by that condition.

Any given tort case of course will depend upon its own facts, and consequently we can advise you only generally on potential liability matters. However, we reiterate that the issues in such a case may include whether the defendant (county or private landowner) owned or controlled the property in question, what the nature of the purported defect was, and what the nature and extent of the duty owed the public was in the circumstances. Even if the defendant does not exercise ownership or control of the property, liability could attach in the event of an accident caused by a condition the defendant created.

---

[4]*See* Tex. Att'y Gen. Op. Nos. GA-0106 (2003) at 7 ("This office cannot find facts or resolve fact questions in an attorney general opinion."); GA-0003 (2002) at 1 ("factual findings . . . cannot be made in the opinion process").

## S U M M A R Y

A commissioners court may not permanently cease to maintain a public road without formally ordering that the road be discontinued and designating an alternative route. *See* TEX. TRANSP. CODE ANN. §§ 251.001(2), 251.051(a), (c) (Vernon 1999). A county's decision as to the frequency of its maintenance of any particular county road is a matter for the discretion of the commissioners court.

Liability in tort for an accident proximately caused by the condition of a road to which the public has a right of access will depend upon the resolution of a variety of questions. These questions may include the ownership or control of the road in question, the nature of the duty owed the public in a particular instance, whether the defect alleged is a premise defect or special condition, and whether or not a particular party caused the defect in question.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General, Opinion Committee