COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-196-CV

 

 

ARNOLDO DOMINGUEZ, INDIVIDUALLY,                                APPELLANTS



AND
AS HEIR OF THE ESTATE OF 

MIRNA
DOMINGUEZ, DECEASED; 

MARIA
DOMINGUEZ, INDIVIDUALLY, 

AND
AS HEIR OF THE ESTATE OF 

MIRNA
DOMINGUEZ, DECEASED; 

FERMIN
VITOLAS, INDIVIDUALLY, 

AND
AS HEIR OF THE ESTATE OF 

FERNANDO
FERMIN VITOLAS, DECEASED; 

EMILIA
OLIVIA CARRILLO DE VITOLAS, 

INDIVIDUALLY,
AND AS HEIR OF THE ESTATE 

OF
FERNANDO FERMIN VITOLAS, DECEASED

 

                                                   V.

 

THE CITY OF FORT WORTH, TEXAS                                         APPELLEE

 

                                              ------------

 

            FROM
THE 17TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








This is an interlocutory
appeal from the trial court=s order granting the City of Fort Worth, Texas=s (hereinafter the ACity@) plea to
the jurisdiction.  We reverse.

On or about June 1, 2004, at
approximately 8:15 p.m., Fernando Fermin Vitolas, along with his passenger,
Mirna Dominguez (hereinafter collectively ADecedents@), were
traveling west on NE 28th Street in Fort Worth, Texas, in a 1992 Geo
Metro.  Decedents were on their way to
meet Fernando=s mother,
appellant Emilia Olivia Carrillo de Vitolas, on Decatur Avenue in Fort
Worth,  where she was departing on a bus
trip to Mexico.  There were severe
thunderstorms in the Fort Worth area at the time.

At the intersection of NE
28th Street and Decatur Avenue, the police were redirecting traffic because
Decatur Avenue was beginning to flood due to the heavy rains.  Fernando turned his vehicle around and headed
back east on NE 28th Street.  Fernando
then made a left turn onto Schwartz Avenue and another left turn onto Vera Cruz
Street, where he successfully traversed a flooded low water crossing equipped
with a sign stating, AWarning
Watch For Flash Flooding.@  He continued on until he turned on Schadt
Street, only to discover that it was a dead end road.








Fernando turned the car
around and made a right turn back onto Vera Cruz Street where he came upon
another flooded low water crossing marked by a sign stating, AWarning Watch For Flash Flooding.@  This was not a thru street,
however, and Fernando found that the other end of the low water  crossing terminated in a grassy area with no
visible roadway. 

Before attempting to drive
across this flooded low water crossing a second time, Fernando decided to wait
for the water to subside.[2]  After waiting approximately 20-25 minutes,
Fernando exited his car to inspect the water level.  A water depth indicator that had been placed
by the City at this crossing was missing. 
Fernando then attempted to drive across the flooded crossing.  The decedents were swept away and drowned
during the attempt. 

On October 6, 2005,
appellants filed suit against the City under Sections 101.021(2), 101.022(b),
and 101.060(a)(2) of the Texas Tort Claims Act (the AAct@), alleging
that the decedents= deaths were
caused by the missing flood depth gauge and that the City failed to replace the
missing gauge within a reasonable time after notice that the gauge was missing.


On April 25, 2006, the City
filed a plea to the jurisdiction based upon  governmental immunity.  After a hearing, the trial court granted the
City=s plea to the jurisdiction and dismissed the suit. 








In four issues, appellants
contend that 1) the decedents= knowledge of the flooding is not a bar to recovery because the
applicable standard of care is that of a landowner to an invitee; 2) the City
did not warn of the absence of the missing water depth gauge or the severity of
the hazard posed by the flooding; 3) the affidavit they submitted in support of
their response to the City=s plea to the jurisdiction is legally sufficient; and, 4) a genuine
issue of material fact exists as to whether the absence of the water depth
gauge caused the decedents= deaths. 

Generally, a governmental
unit[3]
enjoys sovereign immunity from suit and may be sued only if liability arises
under the Act.[4]  If a plaintiff fails to prove the existence
and violation of a legal duty sufficient to impose liability under the Act,
sovereign immunity remains intact.[5]








Under the Act, a governmental
unit has liability for Apersonal
injury and death so caused by a condition or use of tangible personal or real
property if the governmental unit would, were it a private person, be liable to
the claimant according to Texas law.@[6]   To state an actionable claim
under section 101.021(2) based upon the condition, use, or misuse of property,
personal injury or death must be proximately caused by the condition or use of
the property.[7]

In cases where the claim
arises from a premises defect involving real property, section 101.022(a) of
the Act limits the governmental unit=s liability to that which a private person would owe to a licensee on
private property.[8]   Under section 101.022(b), however, this
limitation of duty does not apply to the duty to warn of special defects, or to
Athe duty to warn of the absence, conditions, or malfunction of traffic
signs, signals, or warning devices as is required by section 101.060.@[9]  The relevant provisions of
section 101.060 exclude liability for claims involving injuries caused by the
absence, condition, or malfunction of a traffic or road sign, signal or warning
devices Aunless the absence, condition or malfunction is not corrected by the
responsible governmental unit within a reasonable time after notice.@[10]








Appellants contend that
decedents= knowledge that
the bridge was flooded does not bar their recovery under section 101.060 of the
Act.  We agree.  By its own terms, the limitation of duty in
section 101.022 applicable to premises defects does not apply to section
101.060: AThe
limitation of duty in this section does not apply to the duty to warn of
the . . . absence . . .
of . . . warning devices . . . as is
required by section 101.060.@[11]  Section 101.060(a)(2)
conditions liability on whether the absence, condition, or malfunction of a
traffic or road sign, signal, or warning device is corrected by the
governmental unit within a reasonable time after notice.[12]  Consequently, the City=s liability in this case is dependent, in part, on whether the missing
water depth gauge was corrected within a reasonable time after notice, not on
whether decedents knew the bridge was flooded.[13]  








Appellants allege in their
pleadings that the water depth gauge where the incident in question occurred
had been missing for two years prior to the incident, and that the City had
notice that the gauge was missing prior to the incident but failed to replace
the gauge within a reasonable time after notice.  The City does not challenge these
jurisdictional allegations.  Instead, the
City argues that it satisfied its duty under section 101.060 by warning the
decedents Aof the flood
waters.@  This warning, however, is
immaterial to the appellants= claim under section 101.060(a)(2) that the City failed to timely
replace the water depth gauge or to warn of its absence.

In the alternative, the City
asserts that the missing water depth gauge was not the proximate cause of the
decedents=
deaths.  In support of this assertion,
the City submitted the affidavit of an eyewitness, Bobby Miller.  According to Miller, the level of the water
flowing over the bridge Astayed
approximately the same@ between the
time of the decedents= first
successful crossing of the bridge and their attempted second crossing.  The City contends that this affidavit
testimony proves that the missing gauge was not the proximate cause of the
accident because the decedents knew the depth of the water during their
attempted second crossing.         








Contrary to the City=s interpretation of Miller=s affidavit, we conclude that the affidavit raises a genuine issue of
fact as to whether the water level increased between the decedents= two crossings and, thus, whether the absence of the water gauge
proximately caused their deaths.  The
Miller affidavit establishes that there was a Asevere thunderstorm along with heavy rain@ before the decedents attempted the second crossing; that Athe [decedents=] vehicle=s headlights were turned off at that time@; and that Miller=s Apower had
gone out because of the storm.@  The affidavit does not
establish the depth of the water during either crossing.  

Proximate cause is usually a
question of fact unless the evidence is undisputed and only one reasonable
inference may be drawn.[14]  Because the jurisdictional facts challenged
by Miller=s affidavit
are disputed, and because the affidavit does not conclusively establish the depth
of the water when the decedents crossed the bridge, we hold that the trial
court could not grant the City=s plea to the jurisdiction on the ground that the decedents= deaths were not proximately caused by the missing gauge as a matter
of law.[15]








Finally, the
City contends for the first time on appeal that it is immune from suit under
Section 101.055(2), which is referred to as the Aemergency response doctrine,@ based on City police officers= diversion of decedents from Decatur Avenue due to flooding.[16]  This provision states that the Act Adoes not apply to a claim arising . . . from the action of an employee
while responding to an emergency call or reacting to an emergency situation if
the action is in compliance with the laws and ordinances applicable to
emergency action . . . .@[17]  The City contends that A[w]hile Appellants do not list the diversion as a formal cause of
action, they intimate that the diversion did in fact cause [the decedents] to
lose their way and end up at the intersection of Schadt and Vera Cruz Streets,
where they drowned.@  There is, however, nothing in appellants= pleadings that suggests that the decedents= deaths were caused by the actions of City police officers.  To the contrary, appellants assert in their
brief on appeal that the police officers Adid not cause decedents to cross the bridge that they were swept off
of.@  We, therefore, hold that the
emergency response doctrine is inapplicable to this case. 








In conclusion, appellants
have alleged facts in their pleadings that affirmatively demonstrate the trial
court=s jurisdiction to hear appellants= cause under section 101.060 of the Act, and the evidence submitted by
the City on the issue of proximate cause creates a fact question that defeats
the City=s plea to the jurisdiction.[18]  Therefore, the judgment of the trial court is
reversed and the cause is remanded to the trial court for further proceedings.

 

 

JOHN CAYCE

CHIEF JUSTICE

 

 

PANEL
A:  CAYCE, C.J.; LIVINGSTON and
DAUPHINOT, JJ.

 

DELIVERED:  March 6, 2008  
                       

 











[1]See Tex. R. App. P. 47.4.





[2]According
to appellants, Fernando had some difficulty traversing the crossing the first
time due to the high water.





[3]A Agovernmental
unit@
includes political subdivisions of the state such as cities.  Tex.
Civ. Prac. & Rem. Code Ann. '
101.001(3)(B) (Vernon 2005).





[4]See
id. ' 101.025 (Vernon 2005).





[5]See
City of Denton v. Page, 701 S.W.2d 831, 834 (Tex. 1986).





[6]Tex. Civ. Prac. & Rem. Code Ann. '
101.021(2) (Vernon 2005).





[7]Id.





[8]Id. '
101.022(a) (Vernon 2005 & Supp. 2007).





[9]Id. '
101.022(b).





[10]Id. '
101.060(a)(2) (Vernon 2005).





[11]Id. '
101.022(b).





[12]Id. '
101.060(a)(2).





[13]See
City of Baytown v. Peoples, 9 S.W.3d 391, 396B97
(Tex. App.C
Houston [14th Dist.] 1999, no pet).  The
facts in Corbin v. City of Keller, 1 S.W.3d 743 (Tex. App.CFort
Worth 1999, pet. denied), are distinguishable. 
In Corbin, the appellants asserted a claim under section 101.022,
alleging that the flooding at a low-water crossing was a special defect of
which the City of Keller failed to warn, or to take steps to make safe.  Id. at 746B48.  Here, appellants=
claim is brought under section 101.060, based on the alleged failure of the
City to warn of a missing water depth gauge and to replace the gauge within a
reasonable time after notice.  Appellants
in this case do not contend that the flood waters were a special defect.





[14]See
Ambrosio v. Carter=s
Shooting Ctr., Inc., 20 S.W.3d 262, 266 (Tex. App.CHouston
[14th Dist.] 2000, pet. denied).





[15]See Tex.
Dep=t of
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 227B 28
(Tex. 2004). 





[16]See Tex. Civ. Prac. & Rem. Code Ann. '
101.055(2) (Vernon 2005).  Generally, a
challenge to subject matter jurisdiction may be raised at any time.  See Gorman v. Life Ins. Co. of N. Amer.,
811 S.W.2d 542, 547 (Tex.), cert. denied, 502 U.S. 824 (1991). 





[17]Tex. Civ. Prac. & Rem. Code Ann. '
101.055(2).





[18]Miranda, 133
S.W.3d at 227B28.  Having sustained appellants=
first, second, and fourth issues to reach this conclusion, it is unnecessary
for us to reach appellants= third issue challenging the
legal sufficiency of Miller=s affidavit.  See Tex.
R. App. P. 47.1.