**Opinion issued January 28, 2016**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-15-00345-CV

_____

**CITY OF PEARLAND, Appellant**

**V.**

**JUAN CONTRERAS, Appellee**

---

**On Appeal from the 23rd District Court**
**Brazoria County, Texas**
**Trial Court Case No. 68296**

---

## MEMORANDUM OPINION

The City of Pearland appeals the trial court's denial of its plea to the jurisdiction based on governmental immunity from a construction worker's suit under the Texas Tort Claims Act for on-the-job injuries that he sustained while employed as a subcontractor for the Texas Department of Transportation. *See* TEX.

CIV. PRAC. & REM. CODE ANN. § 101.001 *et. seq.* (West Supp. 2015). On interlocutory appeal, the City contends that the worker has not established a waiver of governmental immunity under the Act, and thus that the trial court erred in denying its plea. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West 2015). Because the record does not raise facts demonstrating the City's actual knowledge of the dangerous condition alleged to have caused the worker's injury, we reverse the trial court's order and dismiss the case for lack of subject-matter jurisdiction.

## BACKGROUND

In early 2010, the Texas Department of Transportation (TxDOT) expanded State Highway (SH) 35 from Beltway 8 to FM 518 in Pearland. The construction project required that the City move its utilities located in SH 35's right-of-way, so the City agreed to pay TxDOT for moving and upgrading its water and sanitary sewer lines. TxDOT in turn hired Triple B, a contractor, to perform the utility work.

During the summer of 2010, Triple B workers were digging at the northwest corner of SH 35 and Farm to Market Road 518. The workers encountered discolored soil and a gasoline-like odor five feet below the road surface. The Pearland Fire Department responded to the incident and investigated the problem. It was discovered that a gas station with underground fuel storage tanks had once stood at that corner. The tanks were removed in 1995, but at the time, the Texas Commission

2

on Environmental Quality (TCEQ) noted groundwater contamination. It put in place monitoring at the site, which continued until 2007.

After the summer 2010 discovery, TxDOT hired Corrigan Consulting, an environmental consulting firm, to prepare a report and management plan for the site. Corrigan's testing showed that the site was contaminated with hydrocarbons at depths below six feet underground, but that the levels of contamination did not exceed occupational exposure limits for construction workers. The City received a copy of the report, and it determined that it would modify the specifications for its new water line to further protect its citizens from groundwater penetration.

Work on the road-widening project continued without incident until October 2011. On October 5, subcontractor Reliable Signal and Lighting was laying a reinforced concrete foundation for a traffic light on the northwest corner, where the earlier soil contamination had been found. Workers had finished drilling a hole for the signal post and were welding inside the hole when a flammable gas inside the hole ignited. Juan Contreras, one of the below-ground workers, sustained burn injuries.

After the accident, the TCEQ conducted further testing of soil borings at the scene, which revealed high levels of hydrogen sulfide four feet below the surface of the northwest corner, where the explosion occurred. It suggested as one possibility that methane gas, which also is flammable, could have accumulated in nearby storm

sewers. After the accident, TxDOT arranged for continued monitoring of the storm sewers for hydrocarbons.

*Course of Proceedings*

Contreras sued RMJ Miller, the owner of nearby underground storage tanks, for negligence. Contreras then amended his petition to add negligence claims against TxDOT and the City based on premises liability, alleging that the City's storm sewers contained excessive levels of flammable gas, which caused the explosion. Contreras further alleged that the City had waived its sovereign immunity against his premises liability claims because the City "owned, controlled and/or maintained the intersection, right-of-way, and/or property" where the accident happened, including the storm sewers.

Contreras later voluntarily nonsuited his claims against TxDOT. The City then filed a plea to the jurisdiction, contending that Contreras had failed to show that the City had waived its governmental immunity for any premises defect alleged to have caused Contreras's injuries. The trial court denied the plea.

## DISCUSSION

The City claims that it is immune from suit because (1) it did not own or control the right-of-way where the explosion occurred, and thus had no legal duty to warn of the risk of explosion or make the premises safe; and (2) even if the City controlled the premises, the flammable gas was not a special defect as the Tort

4

Claims Act defines it, and thus the City, lacking actual or constructive notice that a dangerous condition existed, did not breach the applicable standard of care owed to licensees on the premises. We address these contentions in light of the standard of review and the applicable law for tort claims brought against the government.

## I.  Standard of Review

We review de novo the trial court's ruling on a plea to the jurisdiction, construing the allegations in the plaintiff's pleadings liberally in favor of jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004)). If the plea challenges the existence of jurisdictional facts, the trial court must consider relevant evidence submitted by the parties. *Miranda*, 133 S.W.3d at 227. When the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Id.* at 228. If, however, the evidence creates a fact question regarding jurisdiction, then the trial court must deny the plea and leave resolution of the fact issue to the fact-finder. *Id.* at 227–28. In reviewing the evidence presented, we take as true all evidence favorable to the plaintiff, indulging every reasonable inference in the plaintiff's favor. *Id.* at 228.

## II.  Governmental Immunity in Premises Liability Suits

As a political subdivision of the State of Texas, the City is a governmental unit as defined by the Texas Tort Claims Act. TEX. CIV. PRAC. & REM. CODE ANN.

§ 101.001(3)(B) (West Supp. 2015).  As a governmental unit, the City is immune from suit for claims arising out of its governmental functions except to the extent the Legislature has waived immunity by "clear and unambiguous language."  *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011).  The City's governmental functions include "street construction and design," "sanitary and storm sewers," and "water and sewer service."  TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(3), (9), (32).

The Tort Claims Act waives immunity from suit for liability arising out of premises defects in real property owned or controlled by a governmental entity, like the City.  *Id.* § 101.021.  The Act recognizes two types of premises liability claims: premises defect claims and special defect claims.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a), (b).  To establish a waiver for either type of claim, the plaintiff must first show that the governmental defendant owed a legal duty to the plaintiff.  *City of Denton v. Page*, 701 S.W.2d 831, 834 (Tex. 1986).  The City of Pearland contends that it owed no duty because it did not own or control the property.  Even if it did, it further contends, it had no knowledge of the alleged defect, which is an ordinary defect, and thus its immunity from suit is not waived.

## A.  Control

In a premises liability case, a plaintiff must show that the defendant had a legal duty to warn of a defective condition of the premises or otherwise make them

safe.  *Page*, 701 S.W.2d at 834.  To impose a legal duty on a governmental defendant, the plaintiff must show that the governmental unit owned, occupied or controlled the premises where the accident occurred.  *County of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002).  In other words, a plaintiff must show that a governmental unit "assumed sufficient control over the part of the premises that presented the alleged danger so that [it] had the responsibility to remedy it."  *Id.* at 556.

In support of its plea, the City proffered an affidavit from Trent Epperson, its Director of Projects, who has held that position since 2006.  In that role, he was "responsible for overseeing the operations and management of the Projects Department and was familiar with all capital improvement projects in the City." Epperson averred that the City did not own or maintain the right-of-way for either SH 35 or for FM 518 at the time of the accident.  He acknowledged that the City owns the water and sanitary sewer lines within the right-of-way.  He averred, however, that the City does not own the storm sewer, which "is not a part of the City's utilities."  He expressly stated:  "The storm sewers in TXDOT's right of way belong to TXDOT."  He conceded that the City paid TxDOT to upgrade the City's water and sanitary sewer lines, but noted that the City did not control the project; under the agreement, TxDOT was in charge.

In his affidavit, Epperson further described how the City and his Department learned in the summer of 2010 that TxDOT project workers had encountered "discolored soil and a strong gasoline-like odor at a depth of approximately 5 feet" on "the northwest corner of the intersection of FM 518 and [SH 35] in Pearland." He acknowledged that TxDOT provided the City with a Soil and Groundwater Management Plan, prepared by Corrigan Consulting, Inc. (the "Corrigan report"). Corrigan indicated that the soil and groundwater at the intersection was contaminated with hydrocarbons below a depth of five feet. As a result, he observed, "the City changed the materials specification for its water line in order to protect its citizens from possible contamination of their drinking water."

In connection with the summer 2010 incident, the City also provided business records from its Fire Marshall's office. Investigator David Buchanan of the Fire Marshall's office recounts that he "received a phone call from Tim Nona with the City of Pearland Code Enforcement Office in reference to a possible HazMat spill . . . . Upon arrival, Buchanan found a strong gasoline-like odor. Buchanan found crews to be digging with bulldozers to lay [a] new water line along Main St." He describes the hazard as "oil or other combustible liquid." Because there was a gas station adjacent to the area at one time, Buchanan obtained the property owner's information and noted that he was going to contact the owner to obtain samples.

While only a part of the report is in the clerk's record, the summary of the Corrigan report concludes that "exposure to contaminated soil or groundwater within the TxDOT [right of way] should not pose a threat to construction workers since none of the detected contaminant concentrations exceeded the applicable standards for construction worker exposure." In the report, Corrigan recommended to TxDOT that an environmental specialist be on call "during all excavation" within the affected zone.

Contreras does not dispute that TxDOT controlled the right-of-way and was responsible for relocating and upgrading the water and sanitary sewer lines during the SH 35 widening project. Contreras contends, however, that the evidence presents a fact issue as to whether the City of Pearland controlled the storm sewers at the location of the construction, which he alleges were the source of high levels of the flammable gas that caused the accident. Although Tim Epperson asserted that "[t]he City does not own, control, or maintain the storm sewer," Tim Nona, an environmental health officer who worked for the City for 11 years, testified in describing his job:

> Well, at the time that this took place, it was more of a pretreatment coordinator position. What it does is any illegal discharges into the sanitary sewer system or into the storm drain, I would normally take care of it if it was, let's say, you know, either 25 gallons or less or a small discharge of some sort. I would work with the fire department.

\* \* \*

9

Q: Storm drainage pipes. Aren't there some - - they're along all streets, I think.

A: Yeah, I believe it does go into a curb system. Yeah, that would be the City.

Q: Okay. And who maintains those? The City?

A: The City.

Nona was involved in the investigation of both incidents, together with the Pearland Fire Department.

If the evidence creates a fact question regarding a jurisdictional issue, we must deny a plea to the jurisdiction and leave the fact question for the factfinder to resolve. *Miranda*, 133 S.W.3d at 227–28. In this case, a factfinder could credit either Epperson's or Nona's testimony in determining whether the City exercised control over the storm sewers that investigators concluded were the potential source of the flammable gas that ignited while Contreras was working below ground.

The City responds that the trial court erred in crediting Nona's testimony because TxDOT's contract with the City placed TxDOT in control of the construction project. In rejecting a similar argument in *Brown*, the Texas Supreme Court reasoned that the "relevant inquiry is whether the defendant assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy it." *Brown*, 80 S.W.3d at 556. Because a fact question exists as to the extent of the City's control over the storm

10

sewers, which are alleged to have presented the danger of flammable gas that caused the accident, the trial court did not err in denying the City's plea based on lack of control. The undisputed facts, however, demonstrate that the City did not control the construction and accompanying excavation; thus, any liability against the City must be related to a premises defect associated with the storm sewers themselves. *See id.*

## B.    Special Defect

The liability standards for a premises defect claim against a governmental unit are different than those that apply under the common law. Under the Tort Claims Act, a governmental entity's standard of care depends on whether the claim arises from an ordinary premises defect or a special defect. TEX. CIV. PRAC. & REM. CODE ANN. § 101.022; *City of Grapevine v. Roberts*, 946 S.W.2d 841, 843 (Tex. 1997). If a "special defect" creates an injury-causing condition, the governmental entity owes a claimant the same duty that a private landowner owes an invitee. *Roberts*, 946 S.W.2d at 843. But if an ordinary premises defect causes an injury, the governmental entity owes the claimant the same duty that a private landowner owes a licensee. TEX. CIV. PRAC. & REM. CODE ANN. § 101.022; *Roberts*, 946 S.W.2d at 843. Whether a condition is a special defect is a question of law that we review de novo. *Tex. Dep't of Transp. v. Perches*, 388 S.W.3d 652, 655 (Tex. 2012). The elements

11

of a premises liability case against a governmental unit based on an ordinary premises defect, with the applicable licensee standard of care, are:

> (1) the condition of the premises created an unreasonable risk of harm to the licensee;
> (2) the premises owner or occupier knew of the condition;
> (3) the licensee did not know of the condition;
> (4) the owner failed to exercise ordinary care to protect the licensee from danger; and
> (5) the owner's failure was a proximate cause of injury to the licensee.

*State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992); *see also City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006) (per curiam) (applying *Payne* elements).

In contrast, the elements of a premises liability case based on a special defect, with the applicable invitee standard of care, are:

> (1) the condition of the premises created an unreasonable risk of harm to the invitee;
> (2) the owner or occupier knew or reasonably should have known of the condition;
> (3) the owner failed to exercise ordinary care to protect the invitee from danger;
> (4) the owner's failure was a proximate cause of injury to the invitee.

*Palais Royal, Inc. v. Gunnels*, 976 S.W.2d 837, 841–42 (Tex. 1998); *Payne*, 838 S.W.2d at 237.

The parties disagree about whether the defect alleged in this case was an ordinary or a special defect; this determination, in turn, affects whether Contreras must demonstrate that the City had actual knowledge of flammable gas in its storm sewers at the time of the accident.

The Tort Claims Act does not define the term "special defect," but it likens it to conditions such as "excavations or obstructions on highways, roads, or streets." TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(b). A defect that is not like an excavation or obstruction on a roadway is not a special defect. *Denton County v. Beynon*, 283 S.W.3d 329, 331–32 (Tex. 2009) (citing *Payne*, 838 S.W.2d at 239).

Contreras's allegation against the City is that it failed to remove an excessive buildup of flammable gas in its storm sewers. He does not allege that the City created an excavation or obstruction on the roadway, and there is no evidence that the City was in charge of the signal excavation itself. Because the alleged buildup of flammable gas within an existing storm sewer is not a roadway excavation or obstruction, the alleged premises defect is not a special defect as the Tort Claims Act defines one. *See Beynon*, 283 S.W.3d at 331–32; *Reyes v. City of Laredo*, 335 S.W.3d 605, 607 (Tex. 2010).

Contreras cites *Reyes* for the proposition that special defects may include conditions that represent an "unusual quality outside the ordinary course of events" and "pose an unexpected and unusual danger to ordinary users of roadways." *Id.*

13

(first quoting *City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008) (per curiam), and then quoting and *Tex. Dep't of Transp. v. York*, 284 S.W.3d 844, 847 (Tex. 2009) (per curiam)). He asserts that because an explosion in or near the road would be unusual, the alleged gas buildup is a special defect. But while an excavation or obstruction must be unusual to be a special defect, a condition is not a special defect simply because it is unusual. As *Beynon* clarifies, "a court cannot 'classify as "special" a defect that is not like an excavation or obstruction on a roadway.'" *Beynon*, 283 S.W.3d at 331–32 (quoting *Payne*, 838 S.W.2d at 239 n.3).

Because the alleged defect is an ordinary defect and not a special defect, we hold that the Tort Claims Act limits the duty owed by the City to that which a premises owner owes a licensee; that is, the City's duty was limited to warning of actual defects that it knew about and that Contreras did not know about. *See Perches*, 388 S.W.3d at 654. With this standard in mind, we turn to Contreras's allegations and the evidence adduced in connection with the City's jurisdictional plea.

## C. Actual Knowledge

Contreras must prove that the governmental unit had actual knowledge of the alleged dangerous condition at the time of the injury. *Reyes*, 335 S.W.3d at 609; *Payne*, 838 S.W.2d at 237. Hence, unless the evidence shows that a fact issue exists as to the City's actual knowledge of a dangerous condition in the storm sewers, the City is immune from suit. *Miranda*, 133 S.W.3d at 227–28; *City of Corsicana v.*

14

*Stewart*, 249 S.W.3d 412, 413–14 (Tex. 2008) (holding that because the evidence did not create a fact issue as to whether city had actual knowledge of flooding, the city was immune). Knowledge that a dangerous condition might develop over time is not enough. *Stewart*, 249 S.W.3d at 414–15. Circumstantial evidence, however, may establish actual knowledge when it "either directly or by reasonable inference" supports that conclusion. *Id.* at 415 (quoting *State v. Gonzalez*, 82 S.W.3d 322, 330 (Tex. 2002)).

Contreras alleges that the City knew of the existence of a "gas-vapor problem," citing the report produced by Corrigan Consulting and the reports from work crews of soil discoloration and odor a year earlier at the location where his accident occurred.

The City responds that the Corrigan report did not reveal any gas buildup in the storm sewers, but instead documented that the adjacent soil and groundwater contained petroleum hydrocarbons. The report attributed the problem to leaks from underground petroleum storage tanks that had once been on the site. The City also notes that the gas in the storm sewers at the time of Contreras's accident smelled like hydrogen sulfide (rotten egg smell), whereas the smell emanating from the soil a year earlier was similar to gasoline. Nona testified in a deposition that methane gas had never been a problem in that area. The City offered its maintenance records

between 2007 and the date of the explosion; they showed no mention of methane gas buildup in the storm sewers at the intersection where the fire occurred.

Although the evidence demonstrates that there was hydrocarbon soil contamination at the intersection, there is no evidence in the record before us that the City knew that its storm sewers contained a flammable gas buildup at any point before Contreras's accident, including after the summer 2010 incident. The Corrigan report informed the City of soil and groundwater contamination in the area, but Contreras concedes that the City did not control the jobsite premises or the excavation where the welding took place. No evidence in the record indicates that the City knew that its storm sewers contained flammable gas or even anything that would cause gas to build up in them before the accident occurred.

Under the Texas Tort Claims Act, the City does not waive its immunity from suit for an ordinary premises defect unless it had actual knowledge of the defect at the time that the accident happened. *See Reyes*, 335 S.W.3d at 608 ("[T]he actual knowledge required for liability is of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition can develop over time.") (quoting *Thompson*, 210 S.W.3d at 603). The Corrigan report does not reveal a danger in the storm sewers, that gas was present in them at the time of the accident or at any time before the accident, or that gas buildup was certain to develop in the storm sewers. As the Texas Supreme Court has observed in this context:

16

"Awareness of a potential problem is not actual knowledge of an existing danger." *See id.* at 609. Because the record contains no evidence that the City knew of the alleged defect at the time of the accident, we conclude that the premises defect claim against it is barred by governmental immunity. Accordingly, we hold that the trial court erred in denying the City's plea to the jurisdiction.

## CONCLUSION

We hold that the trial court erred in denying the City's plea to the jurisdiction. We therefore reverse the order of the trial court and dismiss the case against the City of Pearland for lack of subject-matter jurisdiction.

Jane Bland
Justice

Panel consists of Justices Radack, Bland, and Huddle.