Terry Jennings, Justice
Appellant, Cynthia Holland, challenges the trial court's rendition of summary judgment in favor of appellee, Memorial Hermann Health System ("Memorial Hermann"), in her suit against it for premises liability. In her sole issue, Holland contends that the trial court erred in granting Memorial Hermann summary judgment.
We affirm.
Background
In her first amended petition, Holland alleged that she tripped and fell on uneven and cracked pavement while walking on Memorial Hermann's easement of ingress and egress at its Memorial City facility in Houston, Texas. As a result of the fall, she sustained serious, permanent injuries. Holland specifically alleged that Memorial Hermann was negligent in allowing a dangerous condition to exist, creating a dangerous condition, failing to inspect and keep its easement safe from a tripping hazard, and failing to warn visitors that a tripping hazard existed. She requested damages for past and future physical pain and suffering, mental anguish, physical impairment, *892 disfigurement, loss and/or reduction of earnings, and medical expenses.
Memorial Hermann moved for summary judgment,[1] arguing that it is entitled to judgment as a matter of law because it did not own, possess, or control the roadway where Holland fell, negating an essential element of her cause of action for negligence based on her theory of premises liability. Specifically, Memorial Hermann asserted that it was merely a lessor, and, although it has a non-exclusive right of use of the roadways adjacent to its leased premises, its landlord retained ownership and control of the roadway where the incident occurred. It attached to its motion a previously-issued memorandum opinion from this Court;[2] Holland's original petition; discovery exchanged between the parties, including production of the applicable lease agreements and interrogatory responses from Holland in which she admits that the incident occurred at the Memorial City location; Harris County Tax Office Property Tax Receipts; a map of the premises where the alleged injury occurred; the original lease agreement from 1994 in which the property owner retained ownership and control of the roadway at issue; a 2006 lease amendment excluding the roadway at issue from the description of the leased premises; the deposition of Heins and an affidavit executed by him (the "Heins Affidavit") in which he authenticated the attached leases and testified about ownership and control issues.[3]
In his affidavit, Heins testified that Memorial Hermann originally executed a lease agreement in 1994 and, at the time, it was the only tenant on the Memorial City campus. In 2006, Memorial Hermann's landlord, which is now Metro National and Lipex Properties, L.P. ("Metro National"), advised Memorial Hermann of its plan to "construct a multitenant tower on campus and to develop adjacent tracts of land for hotel, restaurant, and retail operations." In recognition that Memorial Hermann would no longer be the sole tenant, the parties entered into the sixth amendment to their lease agreement on or about July 17, 2006. Heins explained that "one of the purposes of this [s]ixth [a]mendment was to save and except specific pieces of property," including the "roadway at issue," for use "by all the tenants." Thus, the sixth amendment "specifically redefined the description of the leased premises to save and except certain parcels including the north/south driveway, which is the roadway where the incident at issue occurred." Since executing the sixth amendment, Memorial Hermann "no longer leased the roadway at issue" and Metro National is "solely responsible for maintenance and repair of roadways on campus." And Heins *893 noted that he "called counsel for [Metro National] and he confirmed that since 2006, [the landlord] has had exclusive control of the roadways and is solely responsible for their maintenance."
In his deposition, Heins testified that Memorial Hermann is responsible for maintenance of the leased premises, which includes only the building and its "envelope," essentially anything attached to the building such as a post or walk ramp. He explained that "any road, sidewalk, landscaping, berm, etc., is the responsibility of Metro National," including the roadway where Holland fell. And the General Counsel of Metro National confirmed to Heins in a telephone conversation that Metro National "owned and controlled and [was] responsible for the maintenance of the roads that run through [the] Memorial City Medical Center campus."
In her response to Memorial Hermann's summary-judgment motion, Holland argued that it was not entitled to summary judgment because it had failed to meet its burden to establish that it lacked control over the premises where she fell. Specifically, she argued that because the roadway on which she fell was potentially constructed by Memorial Hermann and used by its delivery trucks, it could have been within Memorial Hermann's maintenance purview under the various lease agreements. She further asserted that there is sufficient evidence of Memorial Hermann's control over the premises to defeat summary judgment. Holland attached to her response the Heins Affidavit, an Incident Report, an Amended and Restated Parking Facility Traffic Management Agreement (the "Parking Agreement"), and a fifth amendment to the lease agreement, a June 1, 2010 Lease Agreement. Holland later supplemented her response with additional exhibits, including other lease agreements and the affidavit of Brenda Lovell, the Director of Construction Safety for Insite Technical Solutions, a contractor for Memorial Hermann that was "responsible for construction safety" at its facility. In her affidavit, Lovell testified that she believed "the condition of the concrete" where Holland fell, "was a dangerous tripping hazard."
Holland also filed objections to several statements made in the Heins Affidavit, including that they constituted hearsay, parole evidence, and improper legal conclusions and were made without personal knowledge.
In its reply to Holland's response, Memorial Hermann asserted that it lacked ownership or control over the premises where Holland fell. And it asserted that there are limited exceptions to the general rule that a plaintiff must establish that a defendant owns or occupies a premises to establish liability, none of which applied here.
The trial court granted Memorial Hermann summary judgment on Holland's premises-liability claim without ruling on Holland's objections. Holland then filed a motion for new trial and objection to the trial court's refusal to rule on her objections to the Heins Affidavit. The trial court did not rule on the objections, and the motion for new trial was overruled by operation of law.
Evidentiary Challenges
In a portion of her sole issue, Holland argues that the trial court erred in not sustaining objections that she made to certain evidence attached to Memorial Hermann's summary-judgment motion.
We review a trial court's decision to admit or exclude summary-judgment evidence for an abuse of discretion. Starwood Mgmt., LLC v. Swaim , 530 S.W.3d 673, 678 (Tex. 2017). Even if a trial court abuses *894 its discretion, we will only reverse if the error probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a)(1) ; see also Wal-Mart Stores, Inc. v. Johnson , 106 S.W.3d 718, 723 (Tex. 2003).
Holland first argues that the following language from the Heins Affidavit is inadmissible because it is not based on personal knowledge and constituted hearsay and parol evidence:
To my knowledge and belief, one of the purposes of this [s]ixth [a]mendment was for [Metro National] to save and except specific pieces of property from the 1994 lease to be developed by [Metro National] and leased to other businesses and to save and except the roadway at issue for its use by all of the tenants. The [s]ixth [a]mendment specifically redefined the description of the leased premises to save and except certain parcels including the north/south driveway, which is the roadway where the incident occurred.
Holland's argument that Heins lacked personal knowledge to testify about the purpose of the sixth amendment to the lease is based solely on his use of the word "belief"; she asserts that belief alone is insufficient. However, Heins also testified that he is "the Senior Vice-President and Chief Facility Services Officer with Memorial Hermann" and, as part of his duties, he is one of the custodians of records of certain lease agreements. Heins further noted that he personally reviewed the 1994 lease agreement and the sixth amendment to the lease agreement between Memorial Hermann and Metro National and has "personal knowledge of all of the facts stated" within his affidavit. This demonstrates a sufficient basis for personal knowledge. See Brown v. Mesa Distribs., Inc. , 414 S.W.3d 279, 287 (Tex. App.-Houston [1st Dist.] 2013, no pet.) ("An affidavit from a company officer claiming personal knowledge of the issue and the company's records is sufficient evidence for summary judgment."); Miller v. Raytheon Aircraft Co. , 229 S.W.3d 358, 365-66 (Tex. App.-Houston [1st Dist.] 2007, no pet.) ("The personal knowledge requirement is satisfied if the affidavit sufficiently describes the relationship between the affiant and the case so that it may be reasonably assumed that the affiant has personal knowledge of the facts stated in the affidavit."); see also Hydroscience Techs., Inc. v. Hydroscience, Inc. , 401 S.W.3d 783, 791 (Tex. App.-Dallas 2013, pet. denied) ("An affiant's position or job responsibilities can qualify him to have personal knowledge of facts and establish how he learned of the facts.").
Holland next argues that the above-quoted portion of the Heins Affidavit contains hearsay because he "purport[ed] to testify as to the intent of" Metro National, of which he is not a representative. Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is not admissible except as provided by the rules of evidence or some other statute. TEX. R. EVID. 802. From our review of the affidavit, it is apparent that Heins testified based on "his knowledge and belief" as a representative of Memorial Hermann, which is also a party to the pertinent lease agreements and amendments, and not as a representative of Metro National. And Holland does not assert that the lease agreements and amendments attached to the Heins Affidavit were not properly authenticated under the business records exception to the hearsay rule. See TEX. R. EVID. 902(10). Instead, it appears that she is attempting to attack Heins's qualifications to testify about the *895 lease agreements. See Star Hous., Inc. v. Kundak , 843 S.W.2d 294, 298 (Tex. App.-Houston [14th Dist.] 1992, no pet.) ("[T]he proper objection in strictness is not hearsay[,] but a want of testimonial qualification of personal knowledge on the part of the witness...." (internal quotations omitted) ).
Next, Holland asserts that the above-quoted portion of the Heins Affidavit constitutes parol evidence. "When interpreting an integrated writing, the parol-evidence rule precludes the consideration of evidence that renders a contract ambiguous when the document, on its face, is capable of a definite legal meaning." Dupree v. Boniuk Interests, Ltd. , 472 S.W.3d 355, 366 (Tex. App.-Houston [1st Dist.] 2015, no pet.) (citing Americo Life, Inc. v. Myer , 440 S.W.3d 18, 22 (Tex. 2014) ). "The parol evidence rule does not prohibit the consideration of surrounding facts and circumstances that inform the contractual text and render it capable of only one meaning." Id. ; see also Hous. Expl. Co. v.Wellington Underwriting Agencies , 352 S.W.3d 462, 469 (Tex. 2011) ("The rule does not prohibit consideration of surrounding circumstances that inform, rather than vary from or contradict, the contract text."). From our review of the record, Heins's testimony does not in any way contradict or create an ambiguity in regard to the lease agreements' terms, nor does Holland assert this to be the case.
Next, Holland argues that the following testimony of Heins was inadmissible because it constituted a legal conclusion and parol evidence:
Since that time, [Metro National] has been solely responsible for the maintenance and repair of roadways on campus.
However, Holland's parol-evidence objection fails for the same reasons set forth above. See Hous. Expl. , 352 S.W.3d at 469 ("The rule does not prohibit consideration of surrounding circumstances that inform, rather than vary from or contradict, the contract text."). It is generally true that a lay or fact witness's testimony is limited to their perception and the facts of which they have knowledge, and they may not testify as to personal opinions or legal conclusions unless designated as an expert. See TEX. R. EVID. 701 ; see also Ramirez v. Transcon. Ins. Co. , 881 S.W.2d 818, 829 (Tex. App.-Houston [14th Dist.] 1994, writ denied) (holding portion of affidavit stating legal conclusion by lay witness incompetent summary-judgment evidence). However, the above-quoted statement does not constitute a legal conclusion. Heins did not testify as to whether Memorial Hermann owed a duty to Holland. He only testified, within his personal knowledge as Senior Vice-President and Chief Facility Services Officer for Memorial Hermann, as to which entity was responsible for maintaining the roadway at issue.
Finally, Holland asserts that the following testimony of Heins constitutes hearsay, parol evidence, and a legal conclusion:
I personally called counsel for [Metro National] and he confirmed that since 2006, [Metro National] has had exclusive control of the roadways and is solely responsible for their maintenance.
However, Holland's parol-evidence and legal-conclusion objections fail for the reasons already discussed above. And even if the trial court erred in not striking this challenged statement as hearsay, such error would be harmless as it is cumulative in light of the lease agreements and the other admissible testimony of Heins that the roadway at issue was controlled exclusively by Metro National. See TEX. R. APP. P. 44.1(a) (explaining judgment will not be reversed unless error probably caused the *896 rendition of improper judgment); see also Nissan Motor Co. v. Armstrong , 145 S.W.3d 131, 144 (Tex. 2004) ("[E]rroneous admission is harmless if it is merely cumulative.").
Holland further argues that the trial court could not properly consider Heins's deposition testimony because Memorial Hermann attached it to its second supplemental summary-judgment motion without any analysis. It is not clear exactly what Heins is attempting to assert in regard to the deposition testimony. However, to the extent that she is asserting that the deposition testimony was inadmissible, this argument was waived because she did not assert it in the trial court. TEX. R. APP. P. 33.1(a) ; see also Dubose v. Worker's Med., P.A. , 117 S.W.3d 916, 920 (Tex. App.-Houston [14th Dist.] 2003, no pet.). Regardless, Memorial Hermann, in its supplemental summary-judgment motion, explained that it was only a tenant leasing property from Metro National; its lease agreement with Metro National only required it to maintain the "envelope" of the building of its leased premises, including the interior and immediate exterior of the building; and Metro National retained exclusive control of the roadways. Holland provides no further argument as to why it would have been improper for the trial court to have considered Heins's deposition testimony.
We overrule the portion of Holland's sole issue in which she asserts that the trial court erred in not sustaining certain objections that she made to Memorial Hermann's summary-judgment evidence.
Summary Judgment
In the remaining portion of Holland's sole issue, she argues that the trial court erred in granting Memorial Hermann summary judgment because it failed to conclusively establish that it did not control the premises where she fell or create the hazardous condition that caused her injuries.
We review a trial court's summary judgment de novo. Valence Operating Co. v. Dorsett , 164 S.W.3d 656, 661 (Tex. 2005) ; Provident Life & Accident Ins. Co. v. Knott , 128 S.W.3d 211, 215 (Tex. 2003). In conducting our review, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. Valence Operating , 164 S.W.3d at 661 ; Provident Life , 128 S.W.3d at 215. If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious. Beverick v. Koch Power, Inc. , 186 S.W.3d 145, 148 (Tex. App.-Houston [1st Dist.] 2005, pet. denied).
In a matter-of-law summary-judgment motion, the movant has the burden to show that no genuine issue of material fact exists and the trial court should grant judgment as a matter of law. See TEX. R. CIV. P. 166a(c) ; KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp. , 988 S.W.2d 746, 748 (Tex. 1999). When a defendant moves for a matter-of-law summary judgment, it must either: (1) disprove at least one essential element of the plaintiff's cause of action, or (2) plead and conclusively establish each essential element of an affirmative defense, thereby defeating the plaintiff's cause of action. See Cathey v. Booth , 900 S.W.2d 339, 341 (Tex. 1995) ; Centeq Realty, Inc. v. Siegler , 899 S.W.2d 195, 197 (Tex. 1995) ; Lujan v. Navistar Fin. Corp. , 433 S.W.3d 699, 704 (Tex. App.-Houston [1st Dist.] 2014, no pet.). Once the movant meets its burden, the burden shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment. See Siegler , 899 S.W.2d at 197 ;
*897 Transcon. Ins. Co. v. Briggs Equip. Trust , 321 S.W.3d 685, 691 (Tex. App.-Houston [14th Dist.] 2010, no pet.). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. Goodyear Tire & Rubber Co. v. Mayes , 236 S.W.3d 754, 755 (Tex. 2007).
To prevail on a premises-liability claim, "a plaintiff must prove that the defendant possessed-that is, owned, occupied, or controlled-the premises where [the] injury occurred." Wilson v. Tex. Parks & Wildlife Dep't , 8 S.W.3d 634, 635 (Tex. 1999). Holland does not dispute that Memorial Hermann did not own or possess the premises at issue, which is adjacent to Memorial Hermann's lease, but instead argues that it controlled the premises, which gives rise to its liability in this case.
Generally, an owner or occupier of land has no duty to ensure the safety of others on adjacent property that is not within its control. See Hirabayashi v. N. Main Bar-B-Q, Inc. , 977 S.W.2d 704, 706-07 (Tex. App.-Fort Worth 1998, pet. denied) ; see also Dixon v. Hous. Raceway Park, Inc. , 874 S.W.2d 760, 762 (Tex. App.-Houston [1st Dist.] 1994, no writ) ("The duty of a premises owner or occupier to provide protection arises from control of the premises; the duty does not extend beyond the limits of the premises owner's control."); c.f. Wal-Mart Stores, Inc. v. Alexander , 868 S.W.2d 322, 324 (Tex. 1993) ("A lessee is responsible for those areas adjacent to the demised premises which it actually controls."). "Control can be demonstrated by ownership, occupation, management, or possession of property." La China v. Woodlands Operating Co. , 417 S.W.3d 516, 523 (Tex. App.-Houston [14th Dist.] 2013, no pet.) (citing Lefmark Mgmt. Co. v. Old , 946 S.W.2d 52, 53 (Tex. 1997) ).
"Texas courts have recognized four closely-related 'assumed duty' exceptions to the general rule that there is no duty to prevent accidents on adjacent property that a person neither owns nor occupies." Hirabayashi , 977 S.W.2d at 707. "First, a person who agrees or contracts, either expressly or impliedly, to make safe a known, dangerous condition of real property may be held liable for the failure to remedy the condition." Id. (citing City of Denton v. Page , 701 S.W.2d 831, 835 (Tex. 1986) ). "Second, a person who has created a dangerous condition may be liable even though not in control of the premises at the time of injury." Id. (citing Page , 701 S.W.2d at 835 ). "Third, a lessee who assumes actual control over a portion of adjacent property also assumes legal responsibility for that adjacent portion, even though none of the adjacent property is included in the lease." Id. (citing Alexander , 868 S.W.2d at 324 ). And fourth, "where an obscured danger exists on land directly appurtenant to the land owned or occupied, and where that danger is near a place where invitees enter and exit the landowner's or occupier's property, the owner or occupier owes a duty to those invitees entering and exiting to warn of the danger." Id. (citing Renfro Drug Co. v. Lewis , 149 Tex. 507, 235 S.W.2d 609, 615 (1950) ; Parking, Inc. v. Dalrymple , 375 S.W.2d 758, 762 (Tex. Civ. App.-San Antonio 1964, no writ) ). None of these "exceptions" apply here.
First, Memorial Hermann did not agree, contractually or otherwise, to make safe a known dangerous condition. "[A] party who does not own, occupy, or control premises may nevertheless owe a duty of care if it undertakes to make the premises safe for others." See Wilson , 8 S.W.3d at 635. For example, in Wilson , two fishermen drowned in a flood on the Perdenales River, and their survivors sued the Texas *898 Parks and Wildlife Department. Id. Although the department did not own or otherwise control the river, the supreme court remanded the case for retrial on the ground that there was some evidence that the department had voluntarily undertaken a duty to make the premises safe by constructing a flood warning system with an audible alarm, putting up signs warning people to leave the area if they heard the alarm, and otherwise informing visitors that the department's flood monitoring system would provide adequate warning if dangerous flood conditions arose. Id. at 635-36. However, on the day that the two fishermen drowned during a flood on the river, the flood monitoring system was not functioning properly. Id. at 635. Here, in contrast, the evidence does not demonstrate any affirmative action on the part of Memorial Hermann to control the roadway where Holland fell. Heins testified that Memorial Hermann had no right of control over the roadway and Metro National had the duty to inspect, repair, and maintain the roadway. And the crux of Holland's allegations against Memorial Hermann is that it failed to act-whether by warning, making safe, or otherwise.
Second, Memorial Hermann did not assume a duty by creating the condition. Holland asserts that Memorial Hermann was required to conclusively establish that it did not create the premises hazard, and she alludes to the possibility that the condition was caused by Memorial Hermann's use of the roadway. Even assuming this to be true, Memorial Hermann's ordinary use of the roadway, along with other tenants, employees, and customers, did not give rise to a duty for it to perform maintenance on the road to keep it safe from hazards-an obligation that Memorial Hermann established was expressly retained by Metro National. See Vasquez v. Legend Nat. Gas III, LP , 492 S.W.3d 448, 455 (Tex. App.-San Antonio 2016, pet. denied) (rejecting similar claim for premises liability based on condition created by heavy trucks use of public road and explaining "[t]here can be no more 'normal use' of a roadway than to be driven upon by a motor vehicle").
Third, Memorial Hermann has taken no affirmative action to assume control over the premises, i.e., it has not, on its own initiative, taken an overt action to assume possession and control over the roadway. Compare Alexander , 868 S.W.2d at 324 (holding store owner assumed control to maintain ramp outside store on which customer injured, even though property owner retained obligation to maintain surface of sidewalks and parking areas, where store built ramp on own initiative after entering into lease), with Sci. Spectrum, Inc. v. Martinez , 941 S.W.2d 910, 912 (Tex. 1997) (holding by constructing wall around leased premises, defendant did not exercise control over adjacent area). As previously explained, the summary-judgment evidence conclusively establishes that Memorial Hermann did not assume control over the premises at issue.
And finally, Memorial Hermann did not have a duty to its invitees as a result of an obscured danger. This exception has been applied to extend the duty to keep a premises safe from obscured dangers present near the entries and exits of the premises. See Renfro v. Lewis , 149 Tex. 507, 235 S.W.2d 609, 615 (1950). A crack in the pavement on a commonly-used roadway, as alleged by Holland, is not the type of obscured danger contemplated by this exception. See ids="2330539,10207103" index="52" url="https://cite.case.law/sw2d/235/609/">id. (involving dangerous condition created by doorway that opened into drug store directly over set of steps not level with garage floor); cf. Hirabayashi, 977 S.W.2d at 706-07 (holding busy roadway in front of restaurant did not present obscured danger).
*899 Accordingly, we hold that Memorial Hermann's summary-judgment evidence conclusively established that it did not control the roadway where Holland fell or create the dangerous condition that caused her injuries.
Holland next asserts that there is a genuine issue of material fact regarding Memorial Hermann's right to control the roadway where Holland fell. First, she argues that the Parking Agreement constitutes evidence of Memorial Hermann's control because it "gives Memorial [Hermann] broad authority to act in the interest of managing traffic flow," "requires that [it] take any act necessary to prevent injury or impairment of 'the general good name and reputation of the Professional Buildings,' " and "notify the property owner of any 'unusual conditions' Memorial [Hermann] might observe in the course of performing its duties" under the Parking Agreement. However, the Parking Agreement defines the area covered by its terms to be two parking garages and a surface parking lot. It is undisputed that Holland did not fall in one of the parking garages or in the surface parking lot. The Parking Agreement does not purport to extend any sort of responsibility or obligation to Memorial Hermann to premises beyond, or even adjacent to, the facilities covered in it, and there is no evidence in the record that would connect the Parking Agreement with the premises where Holland fell.
Next, Holland argues that section 4.3 of a document entitled "Basic Lease Information Relating to Lease Agreement" raises a fact issue precluding summary judgment because it gives Memorial Hermann permission to make certain minor, non-structural alterations to the leased premises or exterior of the "Project," which is defined to include the land, building, parking facility, and other improvements on the land, without obtaining permission from Metro National, so long as the exterior alterations do not require a permit from the City of Houston and conform with the overall architectural and aesthetic quality of the Memorial City Mall area. However, this document does not mention roadways, and it cannot be reasonably construed to impose a duty, which does not otherwise exist, upon Memorial Hermann to maintain or resurface the roadway at issue.
Finally, Holland asserts that Heins's deposition testimony raises a genuine issue of material fact regarding Memorial Hermann's exercise of control over the premises at issue, noting that he stated that Memorial Hermann's responsibility for repairs would extend to an exterior post, ramp, walkway, and safety railings, if damaged. However, Heins further testified that these items are actually attached to the structure and are part of the exterior "envelope" of the building. Nothing in Heins's testimony extends this duty out to the roadway where Holland fell.
Accordingly, we hold that the trial court did not err in granting Memorial Hermann summary judgment on Holland's premises-liability claim.
We overrule this portion of Holland's sole issue.
Conclusion
We affirm the judgment of the trial court.

In response, Holland filed a motion to continue the hearing on Memorial Hermann's summary-judgment motion and compel the deposition of a corporate representative. Memorial Hermann presented Marshall Heins, a Senior Vice President and Chief Facilities Officer for Memorial Hermann, for deposition. After presenting Heins for deposition, Memorial Hermann filed two supplemental motions for summary judgment, attaching and incorporating his deposition testimony and related exhibits.

We reversed a prior summary judgment granted in Memorial Hermann's favor because it attached to its summary-judgment motion evidence regarding its control, ownership, and possession of the premises at its Memorial City location, but Holland's pleading alleged that she slipped and fell at its Katy location. See generally Holland v. Mem'l Hermann Health Sys. , No. 01-14-00283-CV, 2015 WL 7455328 (Tex. App.-Houston [1st Dist.] Nov. 24, 2015, no pet.) (mem. op.). On remand, Holland amended her petition to allege that she fell at the Memorial City facility.

Several of these exhibits are also attached to Memorial Hermann's supplemental summary-judgment motions.