# Supreme Court of Texas

---

No. 22-0053

---

HNMC, Inc.,

*Petitioner*,

v.

Francis S. Chan, Individually and as Personal Representative of
the Estate of Leny Rey Chan, Jonathan Chan, and Justin Chan,

*Respondents*

---

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

---

**Argued September 14, 2023**

JUSTICE BUSBY delivered the opinion of the Court.

This personal injury case concerns whether a property owner has a duty to make an adjoining public roadway safe from—or otherwise warn of—careless third-party drivers. A nurse was struck and killed by such a driver while crossing the public street next to the hospital where she worked. The trial court and court of appeals held that the hospital owed a specialized, case-specific duty to the nurse because the layout of

its exit and parking lot created a situation in which injury to others was foreseeable.

We hold that courts should not attempt to craft case-specific duties when recognized duty rules apply to the factual situation at hand. Under these recognized rules, the hospital had a limited duty as a premises occupier based on its exercise of control over certain parts of the adjoining public right-of-way. But there is no evidence that any dangerous condition the hospital controlled in the right-of-way caused the nurse's harm. Accordingly, we reverse and render a take-nothing judgment.

## BACKGROUND

Defendant HNMC owns and operates a hospital and a fenced parking lot in Northwest Houston. The hospital and lot are on either side of Cali Drive, a North–South street owned and maintained by Harris County. The county's right-of-way for Cali Drive extends past either side of the street and includes the curb, grass medians, and sidewalks.

One exit from the hospital opens to stairs that lead down to the sidewalk abutting Cali Drive in the middle of the block. Near the bottom of the stairs, in the county right-of-way, HNMC constructed a concrete pad between the sidewalk and the street. The record includes evidence that HNMC built the pad to help drivers drop off and pick up passengers on Cali Drive. The pad is located across Cali Drive from the driveway that cars use to enter and exit the parking lot. But the hospital exit and the parking lot driveway do not line up exactly—the driveway is a few feet North of the hospital exit. On the parking-lot side of the street,

2

HNMC placed traffic control signs in the county right-of-way to the North of the driveway.

There are crosswalks at each end of the block that connect the hospital to the parking lot's pedestrian gates. But rather than walking to the end of the block, using the crosswalks, and using the pedestrian gates to access the lot, many of the hospital's patients, visitors, and employees who exit the building here simply cross Cali Drive in the middle of the block and enter the lot through the driveway. There was a crosswalk in the middle of the block as recently as 2011, but the county abandoned the crosswalk, and its markings faded over time. The abandoned crosswalk did not line up with the hospital exit, the concrete pad, or the parking lot driveway. Instead, the abandoned crosswalk was located a few feet South of the hospital exit and the concrete pad.

From 2008 through 2012, there were several vehicle accidents on Cali Drive involving pedestrians. Concerned, HNMC wrote to the county in 2009, asking it to implement new safety measures on Cali Drive. The county conducted a traffic study, undertook some safety measures, and unilaterally recommended that HNMC take additional safety measures. HNMC did not take the recommended measures.

In 2015, after HNMC declined to take the safety measures and after the abandoned crosswalk had mostly faded, Leny Chan was killed while crossing Cali Drive. A nurse employed by HNMC for more than 30 years, Chan was leaving work and walking to her car located in the HNMC parking lot. She came out of the hospital exit and proceeded to cross Cali Drive in the middle of the block, intending to enter the parking lot via the driveway.

3

At the same time, James Budd was beginning to leave the parking lot in his car. He reached the driveway, pulled up past the traffic control signage located in the right-of-way to his right, and stopped. He looked to his left (South), his right (North), and then looked forward as he began to turn left out of the parking lot to proceed South on Cali Drive. Budd struck Chan as he was turning left. Emergency services responded, but Chan died that evening as a result of her injuries.

Chan's estate and surviving family members (collectively Chan) sued Budd and Siemens Medical Solutions USA, Inc., Budd's employer. Siemens designated HNMC and Harris County as responsible third parties, and Chan then added HNMC as a defendant. At the end of trial, the jury was given an ordinary negligence charge and found all parties negligent. The jury apportioned liability as follows: 40% to Budd, 30% to Harris County, 20% to HNMC, and 10% to Chan. The trial court rendered judgment on the verdict, and Chan settled with Budd and Siemens.

HNMC appealed, arguing among other things that (1) it owed no duty to Chan, (2) Chan failed to obtain a premises liability finding, (3) there is no evidence of liability or damages, and (4) any liability is barred by the Workers' Compensation Act because Chan was an HNMC employee leaving work when she was killed. A panel of the court of appeals agreed with the first argument and reversed, holding that HNMC had no duty to ensure Chan's safety while crossing the street and rendering a take-nothing judgment. *HNMC, Inc. v. Chan*, No. 14-18-00849-CV, 2020 WL 2832780, at *1 (Tex. App.—Houston [14th Dist.]

4

May 28, 2020), *withdrawn and superseded on reconsideration en banc*, 637 S.W.3d 919 (2021).

But the court granted reconsideration en banc and affirmed the trial court's judgment in a 5-4 decision. *Chan*, 637 S.W.3d at 926. The en banc majority noted the general rule that property owners owe no duty to make safe public roadways appurtenant to their property and identified four exceptions to that rule. *Id.* at 929. Instead of applying any of these rules, however, the majority recognized a new duty specific to this situation by analyzing the factors listed in *Greater Houston Transportation Co. v. Phillips*. *Chan*, 637 S.W.3d at 930-36 (citing *Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)). The majority next concluded that HNMC had invited any error regarding the failure to secure a premises liability finding and that sufficient evidence supported the verdict. *Id.* at 936-940. And the majority held that HNMC failed to assign error to the trial court's refusal to apply the Workers' Compensation Act because HNMC's appellate brief attacked only the denial of its motion for summary judgment, which is not reviewable on appeal following a trial. *Id.* at 928 (citing *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996)).[1]

---

[1] Federal precedent had similarly been against the reviewability of a denial of summary judgment, but the Supreme Court of the United States recently held that the denial of summary judgment on purely legal grounds may be challenged on appeal. *Dupree v. Younger*, 598 U.S. 729, 735-36 (2023). Because we decide this case on duty and evidentiary issues, we have no occasion to consider whether *Dupree* should inform our own standard on the reviewability of summary judgment denials.

5

HNMC raises two issues in its petition for review. First, it argues that it did not owe a duty of reasonable care to Chan while she was crossing Cali Drive. Second, HNMC contends that because Chan was leaving her place of employment when she was hit, the Workers' Compensation Act bars any liability to HNMC, her employer. Because both issues raise questions of law, we review them de novo. *Aleman v. Tex. Med. Bd.*, 573 S.W.3d 796, 802 (Tex. 2019).

## I. HNMC had a limited duty to Chan because it placed a concrete pad, driveway, and signs in the county right-of-way.

"The threshold inquiry in a negligence case is duty." *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022) (quoting *Phillips*, 801 S.W.2d at 525). Whether a defendant owes a plaintiff a duty "is a question of law for the court to decide from the facts surrounding the occurrence in question." *Phillips*, 801 S.W.2d at 525. But courts should only consider recognizing a new duty "[w]hen a duty has not been recognized in particular circumstances." *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503 (Tex. 2017); *see also Kenyon*, 644 S.W.3d at 144. If a court has not already decided whether certain circumstances will give rise to a duty, the relevant question is "whether a duty should be imposed in a defined class of cases." *Pagayon*, 536 S.W.3d at 504; *see also Houston Area Safety Council, Inc. v. Mendez*, 671 S.W.3d 580, 583 (Tex. 2023). We therefore begin our analysis by considering whether certain recognized duty or no-duty rules apply in these circumstances.

### A. Because duty rules already address this class of cases, the *Phillips* factors should not be used to create a duty.

Relying on authority from other courts of appeals, the en banc majority identified a background no-duty rule and four "exceptions" in which a premises owner may owe a duty to persons who are not on its property. *Chan*, 637 S.W.3d at 929-930. Our Court's precedent has described these rules somewhat differently.

The majority correctly articulated a background no-duty rule for adjacent streets: "a property owner . . . has no duty to ensure the safety of a person who leaves the owner's property and suffers injury on an adjacent public roadway, or to ensure that person's safety against the dangerous acts of a third party." *Id.* at 929. As we explain below, this rule is supported by our precedent, and it applies to a defined class of cases that includes the facts of this case.

The en banc majority then opined that this rule "is subject to certain exceptions," and it cited several of our cases. *Id.* But most of the cases cited do not directly address duties on public roads, so they are not truly exceptions to the background no-duty rule. Rather, they describe certain classes of cases in which we have recognized that a defendant can owe a duty on premises it does not own or occupy. And the parties in this case dispute whether the facts here—which do involve a public road—fall within any of these classes.[2]

---

[2] We confine our analysis to the duty rules addressed by the parties and do not attempt to identify an exhaustive list of rules that could inform whether a duty exists on these facts. *See In re City of Lubbock*, 666 S.W.3d 546, 556 (Tex. Crim. App. 2023) (citing *United States v. Sineneng-Smith*, 140 S. Ct.

The first duty is that owed by a party who "undertakes to make [a] premises safe for others." *Wilson v. Tex. Parks & Wildlife Dep't*, 8 S.W.3d 634, 635 (Tex. 1999). The second is the duty owed by a landowner whose land contains a dangerous condition or excavation appurtenant to a public highway. *See Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981). The third is the duty owed by a property owner or occupier who assumes actual control of adjacent property. *See Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 324 (Tex. 1993). And the fourth is the duty owed by a property owner or occupier who knows of an obscured danger near the entrance or exit of his property. *See Renfro Drug Co. v. Lewis*, 235 S.W.2d 609, 615 (Tex. 1950). We discuss each of these duties below.

After setting out all of these rules regarding duty, the majority did not analyze their application. Instead, it proceeded to apply the factors listed in *Greater Houston Transportation Co. v. Phillips* to determine whether HNMC owed a duty to Chan. *See Chan*, 637 S.W.3d at 930-36. This was error.

When a duty or no-duty rule already exists that contemplates a particular case's factual situation, the balance addressed in *Phillips* has been struck. Thus, there is no need to apply the *Phillips* factors, and doing so is improper. The *Phillips* factors are inapplicable in cases where there is a duty rule that takes the factual circumstances at issue into account. *See Pagayon*, 536 S.W.3d at 503; *cf. Mendez*, 671 S.W.3d at 583-85 (analyzing whether existence of duty "remained an open

---

1575, 1579 (2020)); *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 782 (Tex. 2020).

8

question" before applying *Phillips* factors).  And even when there is no duty rule, the analysis contemplated in *Phillips* may only be used to identify a class of cases in which a duty exists, not to craft a duty tailored to the unique facts of an individual case.  As we have explained, "the factual situation presented must be evaluated in the broader context of similarly situated actors.  The question is whether a duty should be imposed in a defined class of cases, not whether the facts of the case at hand show a breach." *Pagayon*, 536 S.W.3d at 504.

Here, the en banc majority recognized that at least one of the duty rules applies to the factual circumstances in this case: a property owner or occupier generally owes no duty to make an appurtenant roadway safe for those leaving the property.  That recognition alone demonstrates that balancing the *Phillips* factors is inappropriate.  Moreover, as our analysis below makes clear, other rules addressing when a landowner owes a duty to persons not on its property can also be applied to help answer the duty question on these facts.  For these reasons, the majority erred in analyzing duty by balancing the *Phillips* factors.

### B. HNMC owed Chan a limited duty because it exercised some control over the adjacent right-of-way.

Having concluded that the *Phillips* factors are not a proper framework for analyzing the duty question in this case, we next consider whether the various duty rules identified by the court of appeals and addressed by the parties give rise to a duty here.  We address each rule in turn.

9

### 1. HNMC had no duty to ensure Chan's safety while she was crossing an adjacent public road.

We first consider the background no-duty rule articulated by the en banc majority: "a property owner . . . has no duty to ensure the safety of a person who leaves the owner's property and suffers injury on an adjacent public roadway, or to ensure that person's safety against the dangerous acts of a third party." *Chan*, 637 S.W.3d at 929. We described the principle behind this "well-established rule of law" in *Grapotte v. Adams*, holding that a property owner had no duty to ensure the safety of a sidewalk abutting his property because the sidewalk was maintained by the city, so any duty would rest on the city rather than the neighboring owner. 111 S.W.2d 690, 691 (Tex. 1938). We have also recognized time and again that generally "one person is under no duty to control the conduct of another." *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009).[3]

This no-duty rule contemplates the factual situation in this case. Chan left HNMC's property and was struck in the public roadway by a careless driver. As acknowledged by the Restatement, "no one would think that a land possessor did have a duty of care to others for conditions not caused by the possessor on public highways and streets adjacent to the possessor's land." RESTATEMENT (THIRD) OF TORTS:

---

[3] *See also Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 720 (Tex. 1995) ("As a general rule, there is no legal duty in Texas to control the actions of third persons."); *Phillips*, 801 S.W.2d at 525 (same); *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983) ("As a general rule, one person is under no duty to control the conduct of another." (citing RESTATEMENT (SECOND) OF TORTS § 315 (Am. L. Inst. 1965))).

LIABILITY FOR PHYSICAL & EMOTIONAL HARM § 54 cmt. d (Am. L. Inst. 2012). Moreover, HNMC was under no duty to control the actions of Budd, the careless third-party driver who struck Chan.

Because this rule applies to the factual situation at issue here, HNMC owed no duty to Chan on the ground that she had left its property and was crossing an adjacent roadway. Thus, we turn to the other duty rules identified by the parties.

### 2. HNMC did not agree or contract to make the road safe for others.

We next consider the duty that applies when "a person . . . agrees or contracts, either expressly or impliedly, to make safe a known, dangerous condition of real property." *Holland v. Mem'l Hermann Health Sys.*, 570 S.W.3d 887, 897 (Tex. App.—Houston [1st Dist.] 2018, no pet.). We addressed this rule in *Wilson v. Texas Parks & Wildlife Department*, holding that "a party who does not own, occupy, or control [the] premises may nevertheless owe a duty of due care if it undertakes to make the premises safe for others." 8 S.W.3d at 635; *see also City of Denton v. Page*, 701 S.W.2d 831, 834-35 (Tex. 1986). *Wilson* makes clear that this duty rule springs from the common-law doctrine of negligent undertaking, which sounds in ordinary negligence. *See* 8 S.W.3d at 635 n.4 (quoting RESTATEMENT (SECOND) OF TORTS § 323 (Am. L. Inst. 1965)); *see also Kenyon*, 644 S.W.3d at 151 (explaining the doctrine).

In this case, there is no evidence that HNMC agreed or contracted with anyone to reduce or eliminate the danger of crossing Cali Drive. Instead, HNMC reached out to the county—the entity responsible for the safety of the street—and requested that it make changes. By asking

11

a neighboring landowner to make its property safer, the requesting party does not undertake that obligation itself. The record also shows that the county responded in part by unilaterally suggesting that HNMC perform certain tasks, but HNMC did not do so. HNMC's inaction is not an agreement—express or implied—to make crossing Cali Drive safer. *See Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013) (explaining that claim for negligent undertaking requires that "the defendant undertook to perform services" for another). Accordingly, HNMC did not undertake a duty to Chan.

### 3. The artificial conditions HNMC created were either not on its property or not unreasonably dangerous.

Next, we consider the duty of an "owner or occupant of premises abutting a highway" to refrain from "jeopardiz[ing] or endanger[ing] the safety of persons using the highway as a means of passage or travel." *Kraus*, 616 S.W.2d at 910. This duty rule, which we articulated in *Kraus*, sounds in premises liability and has a long history. *See Atchison v. Tex. & Pac. Ry.*, 186 S.W.2d 228, 229 (Tex. 1945). Our cases have applied it only when the premises owned or occupied by the defendant contains "an excavation or other artificial condition so near an existing highway that [the owner or occupier] realizes or should realize that it involves an unreasonable risk to others . . . traveling on the highway." RESTATEMENT (SECOND) OF TORTS § 368. Notably, this rule applies only to conditions that, "as and when created, involve unreasonable risk of physical harm to persons outside the land because of their plan, construction, location, or otherwise." *Id.* § 364 cmt. a; *see also id.* § 368 cmt. a (explaining that section 368 is a "special application of the rule

12

stated in [section] 364"). Moreover, the rule applies only when the property owner or possessor "knows or should know [the condition is] unreasonably dangerous." *Id.* § 368 cmt. h.

Unlike the next rule we discuss, this particular rule does not address conditions outside the land, so it imposes no duty on HNMC regarding the conditions it created in the county right-of-way. Accordingly, the concrete pad, the parking lot driveway, and the signs cannot support a duty under this rule. In addition, there is no evidence that the conditions Chan identifies on HNMC's property—the hospital exit, the stairs leading down to the street, and the parking lot itself— were dangerous. Nothing inherent in those conditions presented an unreasonable risk of harm to those traveling on Cali Drive. Accordingly, HNMC owed no duty to Chan under this rule.

The parties also discuss some court of appeals decisions that have applied the *Kraus* rule to the release of a dangerous agency from a landowner's property onto a public road.[4] We have not had an opportunity to address this application of the rule, which appears to be rooted in a different section of the Restatement recognizing liability for

---

[4] *See, e.g.*, *Hirabayashi v. N. Main Bar-B-Q, Inc.*, 977 S.W.2d 704, 707 (Tex. App.—Fort Worth 1998, pet. denied) (concluding duty applied "where an owner negligently releases upon the highway 'an agency that becomes dangerous by its very nature once upon the highway'" (quoting *Naumann v. Windsor Gypsum, Inc.*, 749 S.W.2d 189, 191 (Tex. App.—San Antonio 1988, writ denied))); *Golden Villa Nursing Home, Inc. v. Smith*, 674 S.W.2d 343, 350 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (holding nursing home liable for failing to keep patient from wandering onto the highway). *But see Cabrera v. Spring Ho Festival, Inc.*, No. 03-09-00384-CV, 2010 WL 3271729, at *4 (Tex. App.—Austin Aug. 20, 2010, no pet.) (holding crowd dispersing onto highway was not sufficiently dangerous to implicate this rule).

"an activity" on the land that "involve[s] an unreasonable risk of physical harm" to "others outside of the land." RESTATEMENT (SECOND) OF TORTS § 371. This case provides us with no such opportunity, as there was no negligent activity on HNMC's land that could give rise to a duty.

### 4. HNMC exercised control over parts of the right-of-way by constructing the concrete pad, driveway, and signs.

We next consider the duty that applies to a property owner or occupier who "assumes actual control over a portion of adjacent property." *Guereque v. Thompson*, 953 S.W.2d 458, 467 (Tex. App.—El Paso 1997, pet. denied). We recognized this duty in *Wal-Mart Stores, Inc. v. Alexander*, holding that "[a] lessee is responsible for those areas adjacent to the demised premises which it actually controls." 868 S.W.2d at 324.[5] When Wal-Mart built a ramp in a parking lot adjacent to its leased premises "[o]n its own initiative and at its own expense," we applied this rule to conclude that "it assumed actual control of the ramp area" and thus "had a duty of reasonable care to maintain the safety of the ramp." *Id.* at 324-25.[6] But "an owner or occupier of land

---

[5] *See also Page*, 701 S.W.2d at 834-35; *Holland*, 570 S.W.3d at 897 ("A lessee who assumes actual control over a portion of adjacent property also assumes legal responsibility for that adjacent portion." (quoting *Hirabayashi*, 977 S.W.2d at 707)); RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL & EMOTIONAL HARM § 49 Reporters' Note cmt. a. We have also "recognized that under some circumstances, one who creates a dangerous condition, even though he or she is not in control of the premises when the injury occurs, owes a duty of due care." *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997).

[6] *See also County of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002) ("The relevant inquiry is whether the defendant assumed sufficient control

14

has no duty to ensure the safety of others on adjacent property that is not within its control." *Holland*, 570 S.W.3d at 897; *see also Grapotte*, 111 S.W.2d at 691 (looking to actual control to determine whether defendant owed duty to make appurtenant sidewalk safe).

Here, the parties agree that HNMC exercised control over parts of the county-owned right-of-way adjacent to its property by constructing a concrete pad next to the street on the hospital side of Cali Drive, constructing a driveway over the right-of-way on the other side for cars to use in traveling between the parking lot and the street, and erecting traffic control signs in the right-of-way next to the driveway. Accordingly, HNMC had a duty to address any dangerous conditions in those limited areas of the right-of-way where it actually exercised control.

### 5. A careless driver in the public road is not an obscured danger.

Finally, we consider the duty that applies to property owners and occupiers when "an obscured danger exists on land directly appurtenant to the land owned or occupied, and where that danger is near a place where invitees enter and exit the landowner's or occupier's property." *Holland*, 570 S.W.3d at 897. This duty sounds in premises liability, and we applied it in *Renfro Drug*. 235 S.W.2d at 615 ("The duty to keep the premises in a reasonably safe condition was not limited to the rented . . .

---

over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy it."); *cf. Martinez*, 941 S.W.2d at 912 (holding that "[b]y simply erecting a wall around its own leased premises to separate that space from the rest of the building, Science Spectrum did not exercise control over the area adjacent to its premises").

15

space alone but extended as well to the entrances into and the exits from the [occupied space].").  On the other hand, a property owner or occupier has no duty to make safe or warn of a "dangerous condition that is undisputedly open and obvious."  *SandRidge Energy, Inc. v. Barfield*, 642 S.W.3d 560, 563 (Tex. 2022) (citing *Los Compadres Pescadores, L.L.C. v. Valdez*, 622 S.W.3d 771, 788 (Tex. 2021) (citing *Massman-Johnson v. Gundolf*, 484 S.W.2d 555, 556-57 (Tex. 1972))).

Here, Chan was injured by an open and obvious danger: a careless driver.  Although she characterizes certain conditions both on and off HNMC's property as dangerous and asserts that those conditions contributed to the situation that led to Chan's death, nothing about the conditions she identifies was obscured or made those conditions dangerous in and of themselves.  *See Chan*, 637 S.W.3d at 960-61 (Jewell, J., dissenting).  Rather, it was Budd's careless driving that ultimately killed Chan, and nothing about that danger was obscured either.  The risk of injury inherent in crossing any busy street as a pedestrian is unquestionably open and obvious.  HNMC thus owed no duty under this rule.

## II.    HNMC's limited duty does not support the judgment.

Having determined the contours of the duty owed by HNMC, we next consider whether the jury's finding that HNMC was negligent supports the judgment in Chan's favor.  We conclude that it does not.  Under the negligence question submitted to the jury, we hold there is no evidence that a dangerous condition controlled by HNMC proximately caused Chan's death.

16

**The jury charge.** Before addressing the sufficiency of the evidence, we caution that parties should consider carefully whether each applicable duty sounds in premises liability or ordinary negligence so that the correct question(s) can be included in the jury charge. We have held in several cases that a jury's affirmative answer to an ordinary negligence question cannot support a recovery for injury caused by a premises defect. *E.g., United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 472 (Tex. 2017). Absent special instructions or definitions, a jury question regarding negligent activity does not include the essential elements of a defendant's liability for failing to exercise reasonable care in warning about or making safe a dangerous premises condition. *See id.* (citing *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 529 (Tex. 1997); *Keetch v. Kroger Co.*, 845 S.W.2d 262, 266-67 (Tex. 1992); *H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258, 259-60 (Tex. 1992)). Thus, if a defendant properly preserves the issue, the remedy for submitting a negligent activity question when the defendant's duty sounds in premises liability is rendition of a take-nothing judgment. *United Scaffolding*, 537 S.W.3d at 483.

As discussed above, some of the duties addressed by the parties here sound in ordinary negligence while others sound in premises liability. The exercise-of-control duty that we have concluded HNMC owed sounds in premises liability. In *Wal-Mart Stores v. Alexander*, we held that a property owner or occupier "is responsible for those areas adjacent to the demised premises which it actually controls." 868 S.W.2d at 324. In so doing, we cited the Second Restatement's definition of "possessor of land" for the assertion that a party exercising actual

17

control over land owes premises-type duties in the area it controls. *See id.* (citing RESTATEMENT (SECOND) OF TORTS § 328E; *Atchison, Topeka & Santa Fe Ry. v. Smith*, 563 S.W.2d 660, 665-66 (Tex. Civ. App.—Waco 1978, writ ref'd n.r.e.); *Howe v. Kroger Co.*, 598 S.W.2d 929, 930 (Tex. Civ. App.—Dallas 1980, no writ)). Accordingly, to hold a defendant liable for breaching this duty with respect to defective conditions it controls, a premises liability question must be submitted to the jury.

But in this case, the jury charge included only an ordinary negligence question and instructions. The charge defined negligence as "the failure to use ordinary care" and then asked whether "the negligence, if any, of [Budd, HNMC, Chan, or Harris County] proximately cause[d Chan's] death." The charge thus failed to include the essential elements of a premises liability claim. *See United Scaffolding*, 537 S.W.3d at 472 (citing *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983)).

The en banc majority held that HNMC invited any charge error by opposing a premises liability submission requested by a different defendant. *See Chan*, 637 S.W.3d at 937 (citing *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 775 (Tex. 2010)). Chief Justice Christopher disagreed in dissent, contending that it was Chan's obligation to ensure that a charge sufficient for her theory of liability was submitted to the jury, and HNMC was under no obligation to object to the incorrect submission. *See id.* at 950 (Christopher, C.J., dissenting) (citing *United Scaffolding*, 537 S.W.3d at 481). Because HNMC has not challenged the majority's holding about invited error in this Court, we express no view regarding whether it was correct.

18

**The evidence.** Instead, HNMC argues that the charge required proof of breach and proximate cause that Chan failed to provide. Having reviewed the record, we conclude that no reasonable jury could find that the areas of the public right-of-way controlled by HNMC included unreasonably dangerous conditions that proximately caused Chan's death. Ultimately, the hazard Chan faced was a careless driver on Cali Drive: a hazard for which HNMC was not responsible in an area where it had not exercised control.

***The concrete pad and driveway*:** The evidence at trial showed that HNMC installed both the concrete pad and the parking lot driveway in the public right-of-way on opposite sides of Cali Drive. Chan contends that these features, combined with the location of the hospital exit and adjoining stairs on HNMC's property, "concentrated" vehicles and pedestrians into the same area and "funneled" exiting pedestrians over the public sidewalk and HNMC's concrete pad, into the public street and through the county's abandoned crosswalk, and then across the public right-of-way on the other side and into the driveway of HNMC's parking lot.

But the record shows that HNMC did not control the abandoned crosswalk, and that the crosswalk did not connect to either the pad or the driveway—it was located to the South of both. In addition, there is no evidence that the condition of the pad or the driveway posed an unreasonable risk of harm. For example, there were no "funneling" rails or other barriers on the sidewalk or concrete pad that made it unreasonably difficult for Chan to access the marked crosswalks at the ends of the block.

Nor is there any evidence that Budd's careless driving upon exiting the driveway was influenced by the condition of the driveway. When Chan faced the driver in the street, both she and the driver had left the area of the public right-of-way where HNMC exercised control. For these reasons, no reasonable jury could find that HNMC breached its duty regarding a dangerous condition of the pad or driveway in a manner that proximately caused Chan's death.

***The signs***: Chan also contends that the signs HNMC placed in the right-of-way North of the driveway blocked the view of drivers exiting the parking lot. But Budd gave uncontroverted testimony that he pulled up beyond the signs to his right and stopped before observing Cali Drive in each direction, and that he was looking forward—in the direction his vehicle was moving and away from the signs—when he turned left out of the parking lot and struck Chan. Another HNMC employee walking with Chan confirmed that Budd was looking forward when he hit Chan. The signs to Budd's right thus did nothing to obscure his view to the left, where he was turning and Chan was crossing. And Chan's crossing location was in the street South of the driveway, outside the area where HNMC exercised control. Accordingly, no reasonable jury could find that the signs HNMC placed in the right-of-way, even if dangerous, proximately caused Chan's death. Because the evidence is legally insufficient to support the jury's finding of proximate cause regarding the signs or its finding of breach regarding the pad or driveway, HNMC is entitled to a take-nothing judgment. *See Sw. Key Program, Inc. v. Gil-Perez*, 81 S.W.3d 269, 270 (Tex. 2002).

CONCLUSION

Generally, a property owner or occupier owes no duty to make an adjoining public road safe or to warn of potential danger in the roadway. But when a property owner exercises actual control over adjacent property, it does owe premises liability duties to those injured by conditions in the controlled area. Here, HNMC exercised control over limited areas of the public right-of-way abutting Cali Drive. But Chan was not injured by conditions in the controlled area. Instead, she was tragically killed by the careless acts of a third-party driver, a risk for which HNMC was not responsible and from which it had no duty to protect Chan. We therefore reverse the court of appeals' judgment affirming the judgment on the verdict in Chan's favor, and we render judgment that the Chan parties take nothing. *See* TEX. R. APP. P. 60.2(c).

J. Brett Busby
Justice

**OPINION DELIVERED:** January 19, 2024

21