**Opinion issued December 31, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00905-CV

———————————

**CITY OF HOUSTON, Appellant**

**V.**

**JOSE TORRES, Appellee**

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-24041**

---

## MEMORANDUM OPINION

At the heart of this case is the trial court's subject-matter jurisdiction and whether the City of Houston's immunity from suit here was waived under the Texas Tort Claims Act (TTCA).[1] We hold it was not and reverse and render.

---

[1]     *See* TEX. CIV. PRAC. & REM. CODE § 101.021.

## Background

Jose Torres, a painter employed by Arredondo's Real Drywall, Inc., was working at Houston Fire Department (HFD) Station #34. When he arrived on the morning of this incident, around 8:30 a.m., there were no emergency vehicles inside the fire station, although some were parked outside.

Torres began setting up his equipment, including a scissor lift, in one of the bays of the fire station so he could paint the station's ceiling. Because the station's large bay doors were open, and he needed them closed to paint the ceiling, Torres asked one of the firefighters on duty how to close the doors. Torres closed the bay doors by pushing a red button located inside the station. He then positioned the scissor lift directly behind one of the closed bay doors, elevated himself on it, and began painting the ceiling of the station.

Adam Ricci, a firefighter employed by HFD at Fire Station #34, arrived at the fire station that morning at 6:30 a.m.—two hours before Torres—to begin his 24-hour shift. Around 8:00 a.m.—about 30 minutes before Torres arrived—Ricci left the station in one of the emergency vehicles to respond to a call. Before he left, Ricci did not see anyone painting inside the fire station. And before returning to the station, Ricci had not seen or spoken to Torres and did not know that he (or anyone) was inside the station painting.

When Ricci returned to the fire station, he pushed a remote control inside his vehicle to open one of the bay doors. Unbeknownst to Ricci, Torres was standing on top of the scissor lift directly behind that door. When the door opened, it knocked over the scissor lift, injuring Torres.

The record shows that the bay door could have been deactivated. And, according to the City, District Chief Troy Koteras was the highest-ranking person on site that day—and he had the authority to do that.

Following a bench trial, the trial court found[2] that the City "did not act reasonably and its actions proximately causes [Torres's] injuries." It concluded that the City was negligent[3] and awarded Torres damages.

### Governmental Immunity under the Texas Tort Claims Act

In three issues,[4] the City challenges the trial court's subject-matter jurisdiction over Torres's negligence claim. According to the City, the trial court lacked subject-

---

[2] The trial court made this finding in its finding of fact no. 6.

[3] Specifically, in conclusion of law no. 8, the trial court concluded: "Defendant City of Houston breached that duty when it activated the mechanically operated bay door while Mr. Torres was painting the interior of the fire department. The City of Houston's actions proximately caused the accident and the injuries sustained by Mr. Torres."

[4] The City's first two issues challenge (1) the trial court's denial of the City's motion for judgment because Torres presented no evidence to show that his injuries resulted from conduct that fell within the TTCA's waiver of immunity and (2) the sufficiency of the evidence to support the trial court's finding of fact no. 6 and its conclusion of law no. 8. For the reasons discussed below, we address those issues together. Additionally, because of our disposition of these two issues, we do not reach the

matter jurisdiction because Torres presented no evidence that a City employee breached a legal duty in the operation or use of motor-driven equipment.[5]

## A. Standard of Review

Governmental immunity from suit defeats a trial court's subject-matter jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether a trial court has subject-matter jurisdiction is ordinarily a question of law, which we review de novo. *See Miranda*, 133 S.W.3d at 226.

But when, as here, a jurisdictional challenge under the TTCA is raised after a trial on the merits, the standard of review stated in *Miranda* does not apply. *See City of Houston v. Sw. Bell Tel. Co.*, No. 01-16-00734-CV, 2017 WL 3262131, at *2–3 (Tex. App.—Houston [1st Dist.] Aug. 1, 2017, no pet.) (mem. op.); *Prairie View A&M Univ. v. Brooks*, 180 S.W.3d 694, 704 (Tex. App.—Houston [14th Dist.] 2005,

---

City's third issue—that the trial court erred in awarding Torres an amount of damages above the City's limit of liability. *See* TEX. R. APP. P. 47.1.

[5] Torres contends that the City's first two issues are waived. We disagree. As this is an appeal from a bench trial, complaints "regarding the legal or factual insufficiency of the evidence . . . may be made for the first time on appeal in the complaining party's brief." *See* TEX. R. APP. P. 33.1(d). Furthermore, the City raised these same issues, including its immunity, throughout the bench trial, moved for entry of judgment at the close of Torres's case, and filed a post-trial brief in support of its motion for entry of judgment addressing these issues.

no pet.).[6]  Instead, when the factfinder's findings bear on a determination of the trial court's subject-matter jurisdiction, the appropriate standard of review is whether the evidence is legally sufficient to support the factfinder's determination of immunity. *Sw. Bell Tel. Co.*, 2017 WL 3262131, at *2.

Additionally, as part of its issues on appeal, the City also challenges the legal and factual sufficiency of the trial court's determination that it was negligent.  When a party appeals from a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the sufficiency of the evidence supporting those findings with the same standards that we use to review jury verdicts. *See Tex. Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019).  Because the trial court's determination of negligence implicates the issue of immunity, *Miranda*, 133 S.W.3d at 228, we consider the legal sufficiency of the trial court's determination of the City's immunity together with the legal and factual sufficiency of its determination of negligence. *See Sw. Bell Tel. Co.*, 2017 WL 3262131, at *3.

Evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802,

---

[6]    *Cf. San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 136 (Tex. 2015) (explaining that when jurisdictional challenges under the Texas Commission on Human Rights Act, which waives sovereign immunity for certain claims against governmental entities, are raised after trial on merits, inquiry is whether there is legally sufficient evidence to support jury's ultimate finding).

827 (Tex. 2005). Evidence is legally insufficient to support a finding if (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810. When reviewing the legal sufficiency of evidence, we consider the evidence in a light most favorable to the verdict and indulge every reasonable inference to support it. *Id.* at 822. We also credit favorable evidence if a reasonable juror could and disregard contrary evidence unless a reasonable juror could not. *Id.* at 827.

In conducting a factual-sufficiency review, we consider and weigh all of the evidence. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). When the appellant challenges an adverse finding on an issue on which it did not have the burden of proof at trial, we set aside the verdict only if the evidence supporting the finding is so weak as to make the verdict clearly wrong and manifestly unjust. *Id.*

## B.   Applicable Law

The state and certain governmental units are entitled to sovereign or governmental immunity, which deprives a trial court of subject-matter jurisdiction, unless the state waives immunity by consenting to suit. *See* TEX. GOV'T CODE § 311.034; *Miranda*, 133 S.W.3d at 224. The TTCA provides for a limited waiver

6

of this immunity. *See* TEX. CIV. PRAC. & REM. CODE §§ 101.001–.109; *see also*

*Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008).

Section 101.021(1) of the TTCA provides:

> A governmental unit in the state is liable for . . . personal injury . . . proximately caused by . . . *the negligence of an employee* acting within his scope of employment if:
>
> > (A) the . . . personal injury . . . arises from the operation or use of . . . motor-driven equipment; and
> >
> > (B) the employee would be personally liable to the claimant according to the Texas law[.]

TEX. CIV. PRAC. & REM. CODE § 101.021(1) (emphasis added).

The TTCA does not create new duties but simply waives immunity for the

instances specified in the statute. *City of Houston v. Gonzales*, No. 14-20-00165-

CV, 2021 WL 2154155, at *5 (Tex. App.—Houston [14th Dist.] May 27, 2021, no

pet.) (mem. op.) (citing *City of Denton v. Page*, 701 S.W.2d 831, 834 (Tex. 1986)).

Accordingly, the City is immune from suit here unless the evidence demonstrates

that the City owed Torres a legal duty and breached that duty under circumstances

falling within the TTCA's waiver of immunity. *See id.*

Thus, to prove negligence, as required by section 101.021(1), Torres was

required to show the existence of a legal duty, a breach of that duty, and damages

proximately caused by the breach. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288

S.W.3d 401, 404 (Tex. 2009). To determine whether a duty exists, and its

parameters, we are required to "weigh[ ] the risk, foreseeability, and likelihood of

7

injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 149 (Tex. 2022) (quoting *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 182 (Tex. 2004)). "[F]oreseeability of the risk of harm is the foremost and dominant consideration in the duty analysis because there is neither a legal nor moral obligation to guard against that which cannot be foreseen." *Id.* (quotations omitted).

To establish a breach of a legal duty, a plaintiff ordinarily must show that either: (1) the defendant did something which an ordinarily prudent person exercising ordinary care would not have done under the particular circumstances; or (2) the defendant failed to do something which an ordinarily prudent person would have done while exercising ordinary care. *City of Houston v. Cruz*, No. 01-22-00647-CV, 2023 WL 8938408, at *6 (Tex. App.—Houston [1st Dist.] Dec. 28, 2023, no pet.) (mem. op.).

"Proximate cause has two elements: cause in fact and foreseeability." *Rattray v. City of Brownsville*, 662 S.W.3d 860, 874 (Tex. 2023) (quoting *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005)). Cause in fact is established when "the act or omission was a substantial factor in bringing about the injury" and, without it, the harm would not have occurred. *Id.* (quoting *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex. 1985)). Foreseeability, on the other hand, requires "the actor

8

[to] have reasonably anticipated the dangers that his negligent conduct created for others." *Id.* (quoting *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 519 (Tex. 2019)).

Additionally, to assert a claim under section 101.021(1)(A) of the TTCA, Torres was required to show that his damages arose from the City's negligent operation of motor-driven equipment—here, the motorized bay door. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A). "[A]rises from the operation or use" means that there must be "a nexus between the injury negligently caused by a governmental employee and the operation or use of a motor-driven [equipment]." *PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 302 (Tex. 2019). And "use" means "to put or bring into action or service; to employ for or apply to a given purpose," and "operation" means "a doing or performing of a practical work." *Rattray*, 662 S.W.3d at 871 (citations omitted).

Therefore, in order for the City's governmental immunity to be waived under the TTCA, Torres had to present legally sufficient evidence of all the elements of common law negligence *and* that his damages arose from the City's operation or use of the bay door. *See Sw. Bell Tel. Co.*, 2017 WL 3262131, at *3; *Prairie View*, 180 S.W.3d at 704. If the evidence is legally insufficient, immunity is not waived and the trial court lacked subject-matter jurisdiction to hear the case. *Sw. Bell Tel. Co.*,

9

2017 WL 3262131, at *3; *Prairie View*, 180 S.W.3d at 704; *see also Miranda*, 133 S.W.3d at 225–26.

**C.    Analysis**

Here, the parties do not dispute that the bay door at the fire station has a motor.[7] Nor do they dispute that Ricci activated the bay door by pushing a remote-control button in his emergency vehicle—and that, as the door opened, it knocked over the scissor lift that Torres was on and injured him.

Instead, the City argues that Torres failed to offer sufficient evidence that Ricci was negligent—specifically, that he owed a legal duty to Torres that he breached in his operation or use of the motorized bay door. Thus, the City argues that Torres failed to establish a waiver of the City's governmental immunity. We agree.

To begin with, for a waiver to exist under section 101.021(1), "a governmental employee must be the one operating or using the motor-driven equipment." *City of Houston v. Ranjel*, 407 S.W.3d 880, 888 (Tex. App.—Houston [14th Dist.] 2013, no

---

[7]    *See Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001) (interpreting section 101.021(1)(A) and defining "equipment" generally as "[t]he articles or implements used for a specific purpose or activity," and "[m]otor-driven" as "driven by a motor").

pet.).[8]   Here, the undisputed evidence established that Ricci was the only governmental employee who "put [the bay door] into action."[9]

The undisputed evidence also established that Ricci did not know that Torres was on the scissor lift behind the bay door when he opened it. Ricci testified that, before he left the station on the morning of this incident, he did not see Torres, did not speak to Torres, and did not see anyone painting. In fact, Ricci's testimony— that he left the station to respond to a call around 8:00 a.m.—establishes that he had already left the station by the time Torres arrived around 8:30 a.m. Ricci further testified that no one told him while he was gone that anyone was at the fire station

---

[8]     *See also LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992) ("While [section 101.021] does not specify whose operation or use is necessary—the employee's, the person who suffers injury, or some third party—we think the more plausible reading is that the required operation or use is that of the employee. This requirement is consistent with the clear intent of the Act that the waiver of sovereign immunity be limited.").

[9]     But even assuming another City employee's actions could be considered for the purposes of determining waiver under section 101.021(1), the evidence of the required elements of negligence is similarly lacking. For instance, there was some evidence introduced at trial that the bay door could have been deactivated. But the evidence also demonstrated that Koteras was the only City employee with the authority to deactivate the bay door. Assuming without deciding that this failure to deactivate the bay door could potentially qualify as "operation or use" of motor-driven equipment, there is no evidence that Koteras knew that Torres was at the fire station or that he was painting on a scissor lift positioned directly behind the closed bay door. Without this type of evidence, any potential claim of negligence based on a failure to deactivate the door fails due to lack of foreseeability of the risk of harm.

painting, and he "had no idea that someone was standing behind the bay door on a scissor lift" at the time.

And although Torres testified that he believed "people" in the fire station knew that he was there painting—and that he saw an unidentified number of people in the station that day—he also testified that he did not tell anyone that he was going to be painting on a scissor lift directly behind the closed door, nor did he set out any cones in front of the closed door as a precaution. Torres further testified that he never saw or spoke to Ricci before his fall. In fact, Torres had "no interaction" with Ricci at all.

As explained above, in determining whether a duty exists, the dominant consideration is foreseeability. *See Elephant Ins. Co.*, 644 S.W.3d at 149. As our supreme court has explained, "[b]efore imposing a duty of care . . . the risk of harm must be foreseeable." *See Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 36 (Tex. 2002). Because the evidence here demonstrates that Ricci had no knowledge of Torres's presence at the fire station, let alone his specific presence on the scissor lift directly behind the closed bay door, Ricci could not have reasonably anticipated a danger of injury to anyone when he used the remote control in his emergency vehicle to open the door.

Accordingly, based on this record, we conclude that the risk of harm to Torres was not foreseeable and that Ricci owed no duty to him. *See id.* ("[T]here is neither

12

a legal nor moral obligation to guard against that which cannot be foreseen." (quotation omitted)).  Because the evidence establishes that Ricci owed no duty to Torres—a required element of negligence—the City retained its governmental immunity from suit. *See Sw. Bell Tel. Co.*, 2017 WL 3262131, at *3; *Prairie View*, 180 S.W.3d at 704.[10]

---

[10]    We note that the City characterizes the true nature of Torres's claim as the non-use of information, for which there is no waiver of immunity.  According to the City, although Torres presented some evidence that personnel at the fire station were aware of his presence, the failure to communicate his presence to Ricci so that he would not open the bay door when returning from his run amounts to non-use of information.  Torres disagrees and argues that this is a mischaracterization of his claim and the evidence presented at trial—i.e., that Ricci was "negligent in the operation and use of motor-driven equipment by activating the remote controlled, motor driven equipment that opened the bay door, knocked over the scissor lift, and caused [] Torres's injuries."  Regardless, to the extent that the trial court's finding of negligence was based on the failure of City employees to communicate Torres's presence to Ricci, we agree with the City that any failure to communicate does not amount to the "operation or use" of motor-driven equipment as required by the statute. *See, e.g.*, *City of Colony v. Rygh*, No. 02-17-00080-CV, 2017 WL 6377435, at *5 (Tex. App.—Fort Worth Dec. 14, 2017, no pet.) (mem. op.) (concluding that city's alleged negligent failure to notify plaintiffs that their residence could flood with sewage, either before or after city employees used a "Vac" truck to clear blockage in sewer main "had nothing to do with operating or using the Vac truck; it merely implicated human communications (or lack thereof)"); *Tex. Dep't of Transp. v. City of Floresville Elec. Power & Light Sys.*, 53 S.W.3d 447, 455 (Tex. App.—San Antonio 2001, no pet.) ("[T]he basis of [Appellees'] claim is TxDOT's failure to notify [Appellees], which does not involve . . . the operation or use of a motor-driven vehicle.").

## Conclusion

Accordingly, for all of the foregoing reasons, we hold that the evidence establishes that the City owed no duty to Torres, a required element of negligence. Absent proof of the common-law elements of negligence, the City was entitled to governmental immunity under the TTCA. We therefore reverse the trial court's judgment and render judgment dismissing Torres's claims against the City for lack of subject-matter jurisdiction.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Morgan and Dokupil.